DAUPHIN DEPOSIT TRUST CO., TRUSTEE OF ESTATE OF JAMES McCORMICK, DECEASED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 41387. Promulgated January 16, 1931.

*Ralph J. Baker, Esq.*, for the petitioner.
*Arthur H. Murray, Esq., Eugene Harpole, Esq.*, and *S. B. Pierson, Esq.*, for the respondent.

### OPINION.

SEAWELL: The primary issue presented in this case is whether the petitioner is taxable as a trust or whether it is to be considered an association and therefore taxable as a corporation. The years involved are the calendar years 1924 and 1925, for which years the petitioner filed returns as a trust. Section 704 of the Revenue Act of 1928 provides as follows:

(a) If a taxpayer filed a return as a trust for any taxable year prior to the taxable year 1925 such taxpayer shall be taxable as a trust for such year and not as a corporation, if such taxpayer was considered to be taxable as a trust and not as a corporation either (1) under the regulations in force at the time the return was made or at the time of the termination of its existence, or (2) under any ruling of the Commissioner or any duly authorized officer of the Bureau of Internal Revenue applicable to any of such years, and interpretative of any provision of the Revenue Act of 1918, 1921, or 1924, which had not been reversed or revoked prior to the time the return was made, or under any such ruling made after the return was filed which had not been reversed or revoked prior to the time of the termination of the taxpayer's existence.

(b) For the purpose of the Revenue Act of 1926 and prior Revenue Acts, a trust shall, at the option of the trustee exercised within one year after the enactment of this Act, be considered as a trust the income of which is taxable (whether distributed or not) to the beneficiaries, and not as an association, if such trust (1) had a single trustee, and (2) was created and operated for the sole purpose of liquidating real property as a single venture (with such powers of administration as are incidental thereto, including the acquisition, improvement, conservation, division, and sale of such property), distributing the proceeds therefrom in due course to or for the benefit of the beneficiaries, and discharging indebtedness secured by the trust property, and (3) has not made a return for the taxable year as an association.

The pertinent regulations in effect when the return for 1924 was filed were articles 1502 and 1504 of Regulations 65, which provide:

ART. 1502. *Association.*—Associations and joint-stock companies include associations, common law trusts, and organizations by whatever name known, which act or do business in an organized capacity, whether created under and pursuant to State laws, agreements, declarations of trust, or otherwise, the net income of which, if any, is distributed or distributable among the shareholders on the basis of the capital stock which each holds, or, where there is no capital stock, on the basis of the proportionate share or capital which each has or has invested in the business or property of the organization. A corporation which has ceased to exist in contemplation of law but continues its business in corporate form is an association or corporation within the meaning of section 2, but if it continues its business in the form of a trust, it becomes subject to the provisions of section 219.

ART. 1504. *Association distinguished from trust.*—Holding trusts, in which the trustees are merely holding property for the collection of the income and its distribution among the beneficiaries, and are not engaged, either by them-

selves or in connection with the beneficiaries, in the carrying on of any business, are not associations within the meaning of the law. The trust and the beneficiaries thereof will be subject to tax as provided in articles 341–347. Operating trusts, whether or not of the Massachusetts type, in which the trustees are not restricted to the mere collection of funds and their payments to the beneficiaries, but are associated together in much the same manner as directions in a corporation for the purpose of carrying on some business enterprise, are to be deemed associations with the meaning of the Act, regardless of the control exercised by the beneficiaries.

As was said in *Lansdowne Realty Trust et al., Trustees*, 20 B. T. A. 119, the " regulations are an attempt to express the rule applied in *Hecht* v. *Malley*, 265 U. S. 144," and the rulings made by the Bureau pursuant to these regulations " have generally adhered to the view that doing business as a group by representation is a primary indication of an association." See *Kentucky Oil Corporation*, 21 B. T. A. 1150. And we also said in *Commercial Trust Co.*, 18 B. T. A. 1248:

It suffices to say that the Commissioner's regulations and the rulings of the Bureau of Internal Revenue referred to in the *Landreth* case and others had been " reversed or revoked " in so far as necessary for the adoption by the Bureau of the principle embodied in the *Hecht* v. *Malley* decision prior to the time the petitioner filed its return for the calendar year 1924, and that the petitioner is not entitled to relief for that year under section 704 of the Revenue Act of 1928.

We must now inquire whether under the existing law, giving due consideration to *Hecht* v. *Malley, supra*, and other cases, the petitioner is taxable as a trust or as an association in the year 1924.

We said further in *E. A. Landreth Co. et al.*, 11 B. T. A. 1, that the real test applied by the court in *Hecht* v. *Malley*, 265 U. S. 144, as to whether a given trust was to be considered a trust or an association, was whether or not the trust was organized " for purely business purposes " and on the same question the Circuit Court of Appeals for the First Circuit said in *White* v. *Hornblower*, 27 Fed. (2d) 777, that in view of the decision reached in *Hecht* v. *Malley, supra*, the determining factor was whether the trustees were " conducting a business for profit or gain."

On the basis of the aforementioned regulations and rulings of the Commissioner, which were given official sanction by section 704 of the Revenue Act of 1928, and in the light of the various decisions made with respect thereto, we are of the opinion that the record here presented justifies the conclusion that the petitioner is properly to be considered a trust and not an association. The parties are agreed that in the ordinary meaning of the word " trust " both at common law and under the Pennsylvania statutes, the petitioner is in legal nature a trust and that there is present no resemblance to a corporation in the issuance of certificates of ownership to the beneficiaries or anything corresponding to shares of stock. No officers or directors

were elected by the beneficiaries in the operation of the trust and no meetings of the beneficiaries were held for the purpose of participating in its operation or management. Primarily, the parties differ only as to whether the petitioner was engaged in business as contemplated by the statute, the contention of the petitioner being that its business activities were incidental to its main purpose of liquidating the property and distributing the proceeds to the beneficiaries, and that of the Commissioner that such activities were not incidental but constituted " engaging in business " as that phrase is interpreted by *Hecht* v. *Malley*, *supra*.

On a consideration of the entire record, we are of the opinion that the petitioner's contention should be sustained. When James McCormick, Sr., died in 1870, he left a large amount of property, both real and personal, and at that time his wife and three children entered into a trust agreement with respect to the foregoing property. The original trustees or their successors continued to manage or control the estate until 1916, when it was determined to terminate the old trust and create a new trust from the corpus of the estate then undistributed. We know little of what occurred from 1870 to 1916 other than that distributions were being made, but from 1901 to May 12, 1916, the corpus of the estate was reduced from some $2,500,000 to about $883,000 either through distributions in kind or conversions into distributable property and the making of distributions thereof. And we think the evidence amply supports the statement that the property on hand at May 12, 1916, was not reasonably susceptible of distribution as such among the various beneficiaries. The action of the old trustees is of course not controlling as showing the purpose in the creation of the new trust, but those very substantial distributions made of everything capable of distribution are consistent with the petitioner's action after the creation of the new trust and indicate a policy of liquidation as rapidly as reasonably possible rather than the carrying on of a business enterprise " for the purpose of continued efforts in the pursuit of profit and gain."

Admittedly, under the trust agreement of May 12, 1916, the petitioner was given broad powers under which it might well have engaged in business, but the powers granted were such as might reasonably be necessary in the liquidation of such property and the exercise of such powers is shown to have been in the interests of liquidation rather than in furtherance of a business enterprise. The trust instrument stated that the trust was created " for the purpose of holding together so much of the said estate as has not heretofore been partitioned or distributed and realizing as much as possible in the conversion thereof into money " and that the trust should continue for 20 years unless sooner terminated by an agreement in

writing of at least one-third of the beneficial owners, "or by the complete division of distribution of the trust property." Neither of the foregoing provisions is inconsistent with the idea of a liquidating trust. Obviously, where a trustee is to liquidate properties such as here involved, broad powers would properly be given such trustee in the handling of such property, including the holding of such property together until converted into money. The maximum period of 20 years is not unreasonable in view of the character and amount of property involved, and such period might be cut short by an earlier division or distribution of the trust property. A similar period (15 years) was provided for in *Wilson Syndicate Trust*, 14 B. T. A. 508, where we held that the trust was not engaging in business.

And it is also true under the trust agreement here in question that the trustee (petitioner) was authorized from "time to time to make such distributions of the proceeds of the sale or conversion of personal and real estate as in the judgment of the Trustee the best interests of the Estate may permit," but in the carrying out of this provision we find no accumulations of income or proceeds from the sale of corpus, and distributions appear to have been made from both sources as rapidly as the best interests of the estate, from a liquidation standpoint, would permit. As illustrative of this action, we find that the trust received three items of personal property and, as soon as distribution thereof was possible, distribution was made. One was represented by a note of a corporation and another by certain stock of the same corporation, both of which were involved in certain receivership proceedings. As soon as the receivership proceedings were terminated, the note was paid and the stock became available for distribution, and the petitioner proceeded immediately to make distribution of the cash and stock. The third item represented an advance which the old trustees had made to certain individuals who were tenants occupying property included in the trust estate. Subsequent to 1916 the individuals incorporated and issued stock to petitioner in payment of the said advance. The stock was immediately distributed. In line with this policy more than 60 per cent of the corpus was distributed between May 12, 1916, and December 31, 1925, and during that time there was also distributed more than 94 per cent of the income earned during that period. We can not think that these distributions were merely incidental to the profitable operation of a business which was expected to be carried on for 20 years, but rather as reflecting the purpose of liquidation as soon as practicable. In addition, we have the testimony of one of the beneficiaries who was active in the formation of the new trust that the intention was that the "trustee should get rid of them

[assets] as quickly as possible without sacrifice, and distribute them " and that the expressed intentions of the other beneficiaries were to the same effect. The situation here presented with respect to powers granted and actions performed thereunder is somewhat analogous to that in *C. H. Atherton et al., Trustees,* 19 B. T. A. 1172, wherein we held that a trust engaged in liquidating certain property was not to be considered an association, and said:

> While the trustees under the trust instrument were given broad powers and under such powers could undoubtedly have entered into extensive business undertakings, yet the record clearly shows that they have observed closely the purpose for which the trust was formed, namely, the liquidation of the real estate holdings transferred to them by the Honolulu Rapid Transit Co., Ltd., and the payment of the proceeds to the certificate holders. The collection of rent on such holdings until they were sold and the payment of taxes and expenses were in our opinion only incidental.

When we come to examine the evidence with respect to the business activities of the petitioner we find nothing inconsistent with the idea that such activities were incidental to its main purpose, namely, the liquidation as soon as practicable of the property of the estate. One of the activities most strongly urged upon us by the Commissioner as supporting his position is that in connection with property referred to in our findings as the Dauphin Property, but we fail to see in this more than a conservation of the assets until a reasonable realization could be had thereon. It certainly did not go into the business of renting office buildings, but merely converted a hotel into an office building for the purpose of realizing the most possible therefrom. The same is true of its relations with the Paxton Flour & Feed Co., to which it rented certain warehouses. That it made alvances to this tenant in order to have it continue its business would seem to amount to little more than a means of helping a desirable tenant. We think it significant that when the business was incorporated and stock issued on account of the advances, the stock was immediately distributed to the beneficiaries. The real estate activities were of the same nature. Surely, a trust is not to be considered an association merely because it did not sacrifice unimproved real estate, but rather held it until it could be sold in lots for residential or business purposes, if in such sales no attempt was made to engage in the real estate business. The evidence shows that the petitioner did little, if any, more with respect to such property than any individual would have done who had such property for sale, namely, let it be known by means of signs thereon that the property was for sale, but did not attempt to sell the property through extensive advertising or a sales organization. There is no evidence of creating or maintaining an organization "for the purpose of continued efforts in the pursuit of profit and gain" which is one of the

real tests of engaging in business under such circumstances. *Von Baumbach* v. *Sargent Land Co.*, 242 U. S. 503, and *Trustees for the Creditors and Stockholders of Gonzolus Creek Oil Co.* (*Dissolved*), 12 B. T. A. 310.

The Commissioner calls our attention to the statement in *Hecht* v. *Malley*, *supra*, to the effect that " a corporation owning and renting an office building is engaged in business" and urges that because the petitioner had an office building which it rented it must therefore be considered engaged in business. We can not think that such a conclusion is here justified. We think the entire purpose in the creation of the trust must be considered as well as what was done thereunder. In *Hecht* v. *Malley*, *supra*, the court was dealing with three trusts, referred to as the Hecht Real Estate Trust, the Haymarket Trust and the Crocker, Burbank & Co. Association. The latter two were strictly business enterprises. In some respects the first named was similar to the case at bar in that it was created by members of a family and included real estate used for offices and business purposes, which they owned as tenants in common. There is, however, nothing to show that it was other than a trust created for the purpose of the continued operation of the office buildings and business establishments, and under such circumstances it is clear that a trust owning and operating an office building would be engaged in business. (*J. W. Pritchett et al., Trustees*, 17 B. T. A. 1056; *Lansdowne Realty Trust et al., Trustees, supra;* and *Russell Tyson et al., Trustees*, 20 B. T. A. 597.) But it certainly can not be said to follow that in all cases, where a trust holds title to an office building and rents it, the trust is to be considered engaged in business in the sense necessary to cause it to be considered an association. For example, in the *Wilson Syndicate Trust, supra*, a large estate, consisting of many kinds of assets, and including an office building, was placed in the hands of a trustee for liquidation purposes, and 15 years were given for the carrying out of such purposes. The trustee held title to the office building and rented it, and continued to carry on various other business activities consistent with the trust agreement, including the purchase and sale of assets, improvement and operation of a ranch, construction of a dam to irrigate a ranch, exchange of an office building for a ranch, and the execution of long-term leases for office buildings. In spite of all of the foregoing activities, which were certainly of a business nature, the Board held that the trust was not to be considered an association and, in so holding, said:

The trust was not created for the purpose of carrying on a business, and the trustee bought and sold, and carried on other transactions, such as making repairs only for the purpose of conserving the assets until a favorable time

should arrive when a liquidation could be effected under fairly favorable circumstances, and make a distribution among the beneficiaries.

On appeal the above case was affirmed (*Blair* v. *Wilson Syndicate Trust*, 39 Fed. (2d) 43), and the court said:

The difference between the respondent and the Massachusetts Trusts considered in *Hecht* v. *Malley, supra*, is very marked. *The respondent was not organized for the purpose of doing business for profit, nor for doing business at all. Its purpose was to liquidate and distribute an estate.* The beneficiaries other than its creator, had no vested interest in the property and no voice in instituting the trust. They received their distributive portions purely as donations from their mother and could not dispose of their interests, except by an equitable assignment of their rights, subject to the orderly administration of the trust. *Such slight business activities as the trustee conducted were in furtherance of the ultimate purpose of liquidation and distribution.* The similarity as to the provisions for terminating the trust, amending the deed and removing and electing trustees are hardly material as they are not unusual in express trusts. (Italics supplied.)

(See also *Wilson Trust*, 20 B. T. A. 549, an entirely different trust from that involved in *Wilson Syndicate Trust, supra*.)

The Commissioner, however, urges the inapplicability of the foregoing case because of the statements of the court that:

\* \* \* A distinction is to be made between an agreement between individuals in the form of a trust and an express trust created by an ancestor, although they may have some features in common. The controlling distinction is that one is a voluntary association of individuals for convenience and profit, the other a method of equitably distributing a legacy or donation. Congress has recognized this distinction, classing the former as associations, to be taxed as corporations, and at the same time providing for a separate and distinct method of taxing the income of estates and trusts created by will or deed, classing them together for that purpose. \* \* \*

But we do not understand the court to lay down the rule that all express trusts created by an ancestor are to be treated as trusts and not as associations and all agreements between individuals in the forms of trusts are to be considered as associations. In general, we think it is true that the circumstances surrounding the creation of a given trust are strong evidence as to its purpose, but of more importance is whether the trust is carrying on business for profit, or whether it is merely in existence for the distribution of property, and we think the court recognized this fact in the statements quoted above. Besides, the corpus of the trust with which we are here concerned represents property which came to the beneficiaries from a single decedent, though the trust was created by the beneficiaries rather than by the decedent.

In view of the foregoing and on consideration of the entire record, we are satisfied that the petitioner should be taxed as a trust and not as an association. It accordingly becomes unnecessary to consider the error assigned by the petitioner to the effect that, in

determining gain or loss from the sales of property in 1924 and 1925, the starting point should be the fair market value of such property on May 12, 1916, instead of on March 1, 1913.

Reviewed by the Board.

*Judgment will be entered for the petitioner.*

MURDOCK dissents.

---

BLACK, dissenting: I dissent from the majority opinion in this proceeding. The very title of the petitioner is misleading. The title under which it conducted its business operations was "Estate of James McCormick, Deceased." From this sort of a title one would believe that James McCormick, prior to his death, conveyed his property, either by deed or will to a trustee, to be held in trust for the benefit of his heirs. As a matter of fact, James McCormick died intestate in 1870, and his property descended to his heirs under the Pennsylvania laws of descent and distribution, and these heirs, owning the property as tenants in common, for their own convenience and profit organized a common law trust and conveyed the property to trustees to be managed and operated and disposed of according to the terms of the trust. This organization continued until 1916, when it was superseded by the petitioner, another common law trust organized by the then owners of the property for their own convenience and profit, and using the name of "Estate of James McCormick, Deceased," although he had died intestate 46 years prior to the organization of the trust.

I do not question the right of the heirs to organize themselves into a common law trust of this kind and to use the name of "Estate of James McCormick, Deceased," but such procedure should not deceive any one into believing that it makes petitioner any such trust within the meaning of the Federal taxing laws, as we had before us in *Wilson Syndicate Trust,* 14 B. T. A. 508. Petitioner strongly relies on the *Wilson Syndicate Trust* case in support of its contention in the instant case, but I think the two situations are wholly different. The *Wilson Syndicate Trust, supra,* was not a case where parties owning property as tenants in common associated themselves in a common law trust for their own convenience and profit, but was a case where Laura D. Wilson, owner of a large estate, and desiring to make provision for her children, five married daughters, conveyed the property to a trustee in trust to be disposed of as directed in the trust instrument, and one-seventh of the proceeds distributed to each of her five daughters and two-sevenths to her. This kind of a trust presents quite a different situation from that which obtains where persons who own property as tenants in common, such as we have before us in the instant case,

associate themselves in a common law trust for their own convenience and profit, to hold the property, operate it, distribute the profits, and finaly dispose of the corpus. The distinction was well stated by the court in *Blair* v. *Wilson Syndicate Trust*, 39 Fed. (2d) 43, wherein the court said:

* * * A distinction is to be made between an agreement between individuals in the form of a trust and an express trust created by an ancestor, although they may have some features in common. The controlling distinction is that one is a voluntary association of individuals for convenience and profit, the other a method of equitably distributing a legacy or donation. Congress has recognized this distinction, classing the former as associations, to be taxed as corporations, and at the same time providing for a separate and distinct method of taxing the income of estates and trusts created by will or deed, classing them together for that purpose. Section 219, Revenue Act of 1921 (42 Stat. 246).

I am unable to see any distinction of substance between the common law trust (association) involved in this proceeding and the Hecht Real Estate Trust, one of the trusts involved in *Hecht* v. *Malley*, 265 U. S. 144. There were three separate trusts involved in the decision of *Hecht* v. *Malley*, *supra*. The Hecht Real Estate Trust case No. 99 was one of them. Said the Supreme Court, in describing the Hecht Real Estate Trust:

The Hecht Real Estate Trust was established by the members of the Hecht family upon real estate in Boston used for offices and business purposes, which they owned as tenants in common. It is primarily a family affair. The certificates have no par value; the shares being for one-thousandths of the beneficial interest. They are transferable; but must be offered to the trustees before being transferred to any person outside of the family. The trustees have full and complete powers of management; but no power to create any liability against the certificate holders. There are no meetings of certificate holders; but they may, by written instrument, increase the number of trustees, remove a trustee, appoint a new trustee if there be none remaining, modify the declaration of trust in any particular, terminate the trust, or give the trustees any instructions thereunder.

* * * * * * *

The court also said:

We conclude, therefore, that when the nature of the three trusts here involved is considered, as the petitioners are not merely trustees for collecting funds and paying them over, but are associated together in much the same manner as the directors, in a corporation for the purpose of carrying on business enterprises, the trusts are to be deemed associations within the meaning of the Act of 1918; this being true independently of the large measure of control exercised by the beneficiaries in the *Hecht* and *Haymarket* Cases, which much exceeds that exercised by the beneficiaries under the Wachusett Trust. We do not believe that it was intended that organizations of this character—described as "associations" by the Massachusetts statutes, and subject to duties and liabilities as such—should be exempt from the excise tax on the privilege of carrying on their business merely because such a slight measure of control may be vested in the beneficiaries that they might be deemed strict trusts within the rule established by the Massachusetts courts,

I can see no material difference in petitioner's operation for the years involved in this proceeding under the trust instrument set out in the findings of fact in the majority opinion herein from that of the concerns which we held in *Lansdowne Realty Trust*, 20 B. T. A. 119; *Russell Tyson et al.*, 20 B. T. A. 597; and *Zenith Real Estate Trust*, 21 B. T. A. 656, to be associations and taxable as such. For that reason, I dissent from the majority opinion.

STERNHAGEN agrees with this dissenting opinion.