*883 OPINION.
McMahon:
As to the first error assigned in the proceeding in Docket No. 16627, the respondent in his answer, as amended at the hearing, admitted that the petitioner erroneously reported its net income for the year 1921 as $85,170.97 instead of $80,897.32, and that the net income on which the respondent determined a deficiency for the year 1921 was $87,361.96, having disallowed a deduction of $6,464.64 on account of depreciation of an alleged leasehold. We, therefore, approve this correction of error.
The first question presented for consideration is whether the value, if any, of a certain agreement for lease should be included in invested capital.
The petitioner contends that the contract for lease was, in fact, a ground lease and that from and after March 30, 1921, such leasehold interest was a part of its invested capital, and having issued 6,400 shares of its stock of the par value of $100, the invested capital should be the sum of $640,000 prorated over the remaining 276 days of 1921, or the sum of $483,945.20. It is to be noted that March 30, 1921, is the date of the incorporation of the petitioner and that it was not until May 18, 1921, that the stockholders of the petitioner authorized the purchase of the agreement from Clark J. Milliron and Milliron transferred all his right and interest in and to the agreement for lease to the petitioner.
Respondent eliminated the sum of $483,945.20 from invested capital under section 331 of the Revenue Act of 1921, which provides:
That in the case of the reorganization, consolidation, or change of ownership of a trade or business, or change of ownership of property, after March 3, 1017, if an interest or control in such trade or business or property of 50 per centum or more remains in the same persons, or any of them, then no asset transferred or received from the 'previous owner shall, for the purpose of determining- invested capital, be allowed a greater value than would have been allowed under this title in computing the invested capital of such previous owner if such asset had not been so transferred or received: Provided, That if such previous owner was not a corporation, then the value of any asset so transferred or received shall be taken at its cost of acquisition (at the date when acquired by such previous owner) with proper allowance for depreciation, impairment, betterment or development, but no addition to the original cost shall be made for any charge or expenditure deducted as expense or otherwise on or after March 1, 1913, in computing the net income of such previous owner for purposes of taxation.
*884 Clearly, since the previous owner, Clark J. Milliron, paid no consideration for the assignment to him of the agreement for lease, the cost of acquisition to him was nothing; and as Milliron received 6,400 shares of the 6,403 shares of the stock of the petitioner outstanding in payment for the assignment of the agreement, an interest or a control of more than 50 per centum of the property remained in him. In fact, he was practically the sole owner at that time, there being only 2 shares held by two other stockholders. He was also the president of the petitioner and was its counsel. There is no ambiguity in the provisions: “ That, if such previous owner was not a corporation, then the value of any asset so transferred or received shall be taken at its cost of acquisition (at the date when acquired by such previous owner).” The statute applies not only to reorganizations and consolidations, but also to a change of ownership of a trade, business or property under conditions set forth therein. Una Gasoline Co., 22 B. T. A. 45; Simplex Engineering Co., 17 B. T. A. 504; Staub Coal Co., 16 B. T. A. 584; Northwestern Motor Car Co., 15 B. T. A. 1276; and East Market Street Hotel Co., 11 B. T. A. 796.
The action of the respondent in this respect is, therefore, approved.
The petitioner further contends that it is entitled to deduct in each of the year’s 1921, 1923 and 1926, on account of depreciation or exhaustion of the leasehold interest acquired by petitioner May 18, 1921, one ninety-ninth of the value of the leasehold, to wit, one ninety-ninth of $640,000. We agree with petitioner that, although no value could be included in invested capital by reason of the limitation of section 331 of the Revenue Acts of 1918 and 1921, the cost as determined from the fair market value of the property acquired for its stock may be used as a basis for computing deductions for exhaustion over the term thereof for the years 1921 and 1923. Ben T. Wright, Inc., 12 B. T. A. 1149.
As to the allowance of exhaustion for the year 1926, we must be governed by the provisions in that respect contained in the Revenue Act of 1926, which are as follows:
Sec. 204. (c) The basis upon which depletion, exhaustion, wear and tear, and obsolescence are to be allowed in respect of any property shall be the same as is provided in subdivision (a) or (b) for the purpose of determining the gain or loss upon the sale or other disposition of such property, except that * * * [Exceptions not material herein.]
Sec. 204. (a) The basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property; * ⅜ ⅜
(8) If the property (other than stock or securities in a corporation a party to a reorganization) was acquired after December 31, 1920, by a corporation by the issuance of its stock or securities in connection with a transaction described in paragraph (4) of subdivision (b) of section 203 (including, also, cases *885 where part of the consideration for the transfer of such property to the corporation was property or money in addition to such stock or securities,) then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made;
sH ⅜⅞ * * * ⅜< ⅜
Sec. 208. (i) As used in this section the term “ control ” means the ownership of at least 50 per centum of the voting stock and at least 80 per centum of the total number of shares of all other classes of stock of the corporation.
The petitioner acquired the contract for lease on May 18, 1921; The provisions with respect to recognizable gain or loss in a transaction of the kind here involved are the same in the 1921 Act as in the 1926 Act, though stated differently.
Since the facts in this proceeding bring it squarely within the above quoted provisions of the 1926 and 1921 Acts, it follows that for the year 1926, no deduction for exhaustion of the lease is properly allowable.
As a deduction for exhaustion is allowable in 1921 and 1923 it remains for us to determine the fair market value of the property acquired by petitioner.
It appears that petitioner was incorporated March 30, 1921, pursuant to the contract for lease, for the purpose of acquiring this lease. The contract for lease was assigned to C. J. Milliron upon condition that he carry out the provisions of such contract, one of which was to cause the petitioner to execute the lease therein provided for. The lessor corporation had been incorporated, pursuant to the contract for lease, January 15, 1921. Practically, petitioner, although it did not actually execute the lease until May 20, 1921, acquired it May 18, 1921, the date of the transfer to it of the contract for lease by C. J. Milliron and wife. To hold otherwise would be to regard the form rather than the substance of the transaction. See William Penn Hotel Co., 23 B. T. A. 566; Hotel Waldorf Co., 22 B. T. A. 430; and Martha Realty Co., 22 B. T. A. 342. The term of the lease is 99 years commencing January 1, 1921.
As we have found the value of the leasehold to be $640,000, in our opinion, the value may be ratably exhausted over the term of the lease for the years 1921 and 1923. However, under the provisions of the Revenue Act of 1926, no deduction can be allowed on account of the exhaustion of the lease for the year 1926.

Judgment will be entered under Rule 50.