MONROVIA OIL COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 37912, 45200. Promulgated June 9, 1933.

336

*Thomas R. Dempsey, Esq., A. Calder Mackay, Esq.*, and *Arthur McGregor, Esq.*, for the petitioner.

*J. M. Leinenkugel, Esq.*, and *D. H. Flagg, Esq.*, for the respondent.

340

[redacted]

OPINION.

BLACK: The issues raised by petitioner may be summarized as follows:

1. Is the Monrovia Oil Co. taxable as a trust or as a corporation?

2. Do the amounts which were required, under the participating oil agreements, to be distributed to the agreement holders constitute taxable income to petitioner, or deductions in the determination of its net taxable income?

3. What was the value, for depletion purposes, of the sublease at the time acquired by petitioner?

4. Do drilling costs of an oil well paid under a turnkey drilling contract constitute a capital item to be added to the depreciable base returnable as depreciation, or should a portion thereof be allocated to the capital sum returnable through depletion?

5. Is the cost of deepening petitioner's well under a contract a capital item, or does it constitute an operating expense during the year expended?

6. If the deepening costs are proper deductions, then in that event a loss will be shown for the year 1923 for the Monrovia Oil Co. Is

such a loss a proper one to be carried forward as a deduction in determining the 1924 income?

We will discuss these issues in their order.

1.

One of the years involved in this proceeding is 1923, and section 704 of the Revenue Act of 1928 would be applicable if the facts were such as to bring petitioner within the terms of it, but they are not. Petitioner did not file a return as a trust, but for the year 1923 first filed a return as an individual on Form 1040 and later filed as an amended return an ordinary corporation income tax return on Form 1120. This makes section 704, Revenue Act of 1928, inapplicable. *Jackson-Wermich Trust*, 24 B.T.A. 150; *Russell Tyson et al., Trustees*, 20 B.T.A. 597. So, for both the years 1923 and 1924 we have before us for decision the question whether petitioner should be adjudged an association, taxable as a corporation, or should be taxed as a trust.

This Board and the courts have held in a number of cases that if the purpose of the trust is to carry on a continuing business operation for profit, under quasi-corporate form, that it is an association taxable as a corporation. *Hecht* v. *Malley*, 265 U.S. 144; *Little Four Oil & Gas Co.* v. *Lewellyn*, 35 Fed. (2d) 149; certiorari denied, 280 U.S. 613; *White* v. *Hornblower*, 27 Fed. (2d) 777; *E. A. Landreth Co.*, 11 B.T.A. 1; *Alexander Trust Property*, 12 B.T.A. 1226; *Durfee Mineral Co.*, 7 B.T.A. 231; *J. W. Pritchett et al., Trustees*, 17 B.T.A. 1064; *Rochester Theater Trust Estate*, 16 B.T.A. 1275; *G. F. Sloan*, 24 B.T.A. 61; affd., 63 Fed. (2d) 666; *Trust 5833, Security First National Bank* v. *Welch*, 54 Fed. (2d) 323; certiorari denied, 286 U.S. 544; *Lloyd M. Willis et al., Trustees*, 22 B.T.A. 564; affd., 58 Fed. (2d) 121. But, on the other hand, if the trust is formed merely for convenience for the purpose of preserving or distributing property among beneficiaries or to liquidate and wind up a business and not for the purpose of engaging in business for a profit, it is not an association taxable as a corporation. *Blair* v. *Wilson Syndicate Trust*, 39 Fed. (2d) 43; *Wilson Trust*, 20 B.T.A. 549; *Gonzolus Creek Oil Co.*, 12 B.T.A. 310; *Terminal Properties Co.*, 19 B.T.A. 584; *Dauphin Deposit Trust Co., Trustee*, 21 B.T.A. 1214. The effect of the foregoing decisions is to draw substantially the same distinction as the Commissioner has drawn in his regulations. Recently, these regulations were fully discussed and approved by the court in *Trust No. 5833, Security First National Bank* v. *Welch, supra.* The regulations applicable in that case were articles 1312 and 1314 of Regulations 74 (Revenue Act of 1928), but the court in discussing these articles mentioned the fact

that they were substantially the same as articles 1502 and 1504 of Regulations 65 (Revenue Act of 1924) and corresponding articles of Regulations 69 (Revenue Act of 1926). Articles 1502 and 1504 of Regulations 65 (Revenue Act of 1924), read as follows:

ART. 1502. *Association.*—Associations and joint-stock companies include associations, common law trusts, and organizations by whatever name known, which act or do business in an organized capacity, whether created under and pursuant to State laws, agreements, declarations of trust, or otherwise, the net income of which, if any, is distributed or distributable among the shareholders on the basis of the capital stock which each holds, or, where there is no capital stock, on the basis of the proportionate share or capital which each has or has invested in the business or property of the organization. A corporation which has ceased to exist in contemplation of law but continues its business in corporate form is an association or corporation within the meaning of section 2, but if it continues its business in the form of a trust, it becomes subject to the provisions of section 219.

ART. 1504. *Association distinguished from trust.*—Holding trusts, in which the trustees are merely holding property for the collection of the income and its distribution among the beneficiaries, and are not engaged, either by themselves or in connection with the beneficiaries, in the carrying on of any business, are not associations within the meaning of the law. The trust and the beneficiaries thereof will be subject to tax as provided in articles 341–347. Operating trusts, whether or not of the Massachusetts type, in which the trustees are not restricted to the mere collection of funds and their payments to the beneficiaries, but are associated together in much the same manner as directors in a corporation for the purpose of carrying on some business enterprise, are to be deemed associations within the meaning of the Act, regardless of the control exercised by the beneficiaries.

In construing these regulations the court, in *Trust No. 5833, Security First National Bank* v. *Welch, supra,* said:

If we accept, as we think we should, the interpretation placed upon the word "association" by the Commissioner of Internal Revenue, inferentially approved and adopted by Congress in subsequent legislation, based upon the decision of the Supreme Court in *Hecht* v. *Malley, supra* * * *.

Then the court went on to hold that, measured by these regulations, Trust No. 5833, Security First National Bank, was an association taxable as a corporation. The trust involved in that case was organized to subdivide and put on the market and sell for profit a tract of land located in the city of Los Angeles, California. In the instant case the trust was organized to develop an oil well in Signal Hill Oil Field, one of the largest oil fields in the world, near the city of Los Angeles, California, and to operate the oil well after it should be brought into production and to market the oil and gas obtained therefrom at a profit and distribute the profits to the holders of participating oil agreements. The form of organization was very similar to that involved in *Trust No. 5833, Security First National Bank* v. *Welch, supra,* and while in the one case the trust dealt in

oil and gas and in the other the trust dealt in real estate, we do not think that fact furnishes any basis for a distinction. If the court was right, as we think it was, in holding Trust No. 5833, Security First National Bank, an association taxable as a corporation, then we must hold petitioner in the instant case an association taxable as a corporation.

In *Little Four Oil & Gas Co.* v. *Lewellyn*, 35 Fed. (2d) 149; certiorari denied, 280 U.S. 613, the Court drew substantially the same distinction between a trust and an association as is drawn by the Commissioner's regulations, quoted above, and discussed in *Trust No. 5833, etc.* v. *Welch, supra*, except the court said that the theory that the distinction between trusts of the Massachusetts type, and their consequent liability for taxes, is based on the powers exercised by the shareholders, great or little, is no longer seriously regarded. Said the court in discussing that point:

The real test is whether the shareholders or trustees, or both combined, carry on business for profit, and if they do, they constitute a business trust, in legal effect an association or a joint stock company, with liability for taxes * * *. We hold on these facts that the collectors were right in regarding this organization, however named, as an unincorporated association conducting a business for profit in quasi corporate form, liable for taxes at the corporation rate by force of the provisions of the applicable Revenue Act.

So, without taking time to review the many decisions of the Board and the courts which deal with the issue here involved, we think it is safe to say that the weight of authority is to the effect that, where the trust organization is carrying on a business for profit under quasi-corporate form, it is taxable at corporation rates. Petitioner urges, as its principal authorities in support of its contention that we should hold it taxable as a fiduciary under section 219 of the applicable revenue acts instead of taxable as a corporation, *Julius Blum, Trustee*, 25 B.T.A. 119, and *Lucas* v. *Extension Oil Co.*, 47 Fed. (2d) 65; affirming 16 B.T.A. 1028. We do not consider that the views expressed in either of these cases are in conflict with the views expressed herein.

In the *Blum* case ten persons purchased an oil lease and for convenience executed only a limited deed of trust to Blum, who had authority merely to collect the rent from the lease and after payment of expenses distribute the proceeds among the ten beneficiaries. There was no authority to engage in business, own or dispose of property, and no stock or sale of beneficial interests provided for. In the *Extension Oil Co.* case, the trust was created to sell the oil well, which was done in a few months' time. The money raised by the medium of the trust was merely for exploration purposes.

In *Twin Bell Oil Syndicate*, 26 B.T.A. 172, we pointed out the distinction in the situation which existed in the *Extension Oil Co.*

case from the situation which exists in a case such as we are now discussing, in the following language:

Petitioner relies strongly upon *Extension Oil Co.*, 16 B.T.A. 1028, (affd., C.C.A., 5th Cir., 47 Fed. (2d) 65), in which under facts somewhat similar to those of the instant case we held a body to be a trust and not an association. But that case can be easily distinguished. There, the organizers combined for the sole and restricted purpose of drilling a single oil well *for test purposes*, and as soon as the value of the leased land was thus learned, of selling the lease. This purpose was promptly carried through in eleven months time. Here, the original trust agreement ran for twenty years and as amended for fifty, and the trustees were given full powers to develop the lease as they saw fit. They did, it is true, distribute the profits when made, but this fact of distribution does not, in our opinion, negative the petitioner's obvious business purpose. * * *

On the strength of the authorities already cited, as applied to the facts stated in detail in our findings of fact, we hold that petitioner during both of the years involved in this proceeding was an association, taxable as a corporation.

## 2.

It is petitioner's contention that the amounts which were required under the terms of the participating oil agreements to be distributed to the holders of said agreements constitute either deductions to petitioner or are nontaxable income to it. Petitioner contends that the amounts were deductible under section 219 (b) (2) of the applicable revenue acts, which reads as follows:

There shall be allowed as an additional deduction in computing net income of the estate or trust, the amount of the income of the estate or trust for its taxable year which is to be distributed currently by the fiduciary to the beneficiaries.

It is enough to say as to this particular phase of petitioner's contention that since we have held petitioner taxable as an association and not as a fiduciary, the provisions of section 219 are not applicable.

Petitioner contends in the alternative that the amounts distributed to the holders of participating oil agreements were never the income of petitioner, but belonged to the distributees at all times. This contention must be denied. Petitioner was the owner of the oil lease and the oil well drilled thereon, and of the oil and gas produced and of the proceeds resulting from the sale thereof. Whatever profits resulted from the oil and gas production and sale were its profits and taxable to it, just the same as a corporation's profits are taxable to the corporation. Even if the proof in the instant case showed that the purchasers of the oil and gas from petitioner did

not pay the money direct to petitioner but on the contrary disbursed it direct to the holders of the oil participating agreements, that would make no difference. The profits, being those of petitioner, would be taxable to it, even although paid direct to the certificate holders. Cf. *Gold & Stock Telegraph Co.*, 26 B.T.A. 914; *Marquette Oil Distribution Co.*, 27 B.T.A. 960. However, the facts do not show that the proceeds from the sale of the oil and gas production were paid direct to the holders of the participating oil agreements. Petitioner kept books during the taxable years in question and presumably these books showed all receipts and disbursements, and we have nothing on which to base a conclusion that the distributions in question were not made by the petitioner itself. These distributions were comparable to the distribution by a corporation of dividends and certainly a corporation does not secure a deduction from income by reason of dividends paid to its stockholders. We hold against petitioner on this issue.

3.

Under assignment of error 3, petitioner contends that the value of the oil lease at the time assigned to petitioner in exchange for 800 common participating oil agreements was at least $80,000, which should be added to petitioner's depletable base returnable through depletion as to both taxable years in question. Respondent contends that the basis for depletion is cost to the transferors, in this case not more than $15,100, by reason of section 204, subdivisions (a) (8) and (c), Revenue Act of 1924, and section 202 (c) (3), Revenue Act of 1921.

These sections provide in effect that when property is acquired in exchange for stock (without money or other property as consideration) from persons who immediately after the transfer are in control of the corporation, the basis for gain or loss is the cost to the predecessor. Section 204 (c), Revenue Act of 1924, provides that the basis for depletion and depreciation shall be the same as the basis for determining gain or loss. The Revenue Act of 1921 contains no such provision. This fact was fully discussed in *Fifth Street Building*, 24 B.T.A. 876, in which the taxpayer was allowed exhaustion on its leasehold for the years which came under the 1921 Act, based on cost to the corporation which was $640,000, but for the year 1926 was allowed no exhaustion of the leasehold because the 1926 Act provides, as does the 1924 Act, that the basis for depletion, exhaustion and depreciation shall be the same basis as that for determining gain or loss, and in the *Fifth Street Building, supra,*

the basis for gain or loss, by reason of sections 203 and 204 of the Revenue Act of 1926, was cost to the transferors (which in that particular case was nothing). Cf. *Ben T. Wright, Inc.*, 12 B.T.A. 1149; *Lucas* v. *Daniel*, 45 Fed. (2d) 58.

As has been detailed in our findings of fact, the cost to petitioner of the oil lease in question was 800 common oil participating agreements of a par value of $100 each ($80,000) and the fair market value of the lease at the time of transfer was $80,000. The cost to petitioner of the lease was therefore $80,000 and it is entitled to have that amount added to its depletable base, returnable through depletion, so far as the year 1923 is concerned. This right is not restricted by the provisions of section 202 (c) (3), Revenue Act of 1921, which has nothing to do with the determination of depletion and depreciation. The situation however as to the year 1924 is different. For that year the basis for depletion and depreciation is made the same as the basis for gain or loss and by reason of section 204 (a) (8) of such act the basis of gain or loss in such circumstances as we have in the instant case is cost to the transferors. It seems clear to us in the instant case that immediately after the transfer of the lease by Casner, acting for himself, his wife and Lawler, these parties were in control of the association, coming within the terms of section 203 (b) (4), Revenue Act of 1924. The cost to the transferors of the lease was $15,100, and this is the amount which should be added to the depletable base recoverable through depletion, so far as the year 1924 is concerned.

### 4.

The issue involved in assignment of error 4 was recently decided by the Supreme Court in *United States* v. *Dakota Montana Oil Co.*, 288 U.S. 459; *Petroleum Exploration* v. *Burnet*, 288 U.S. 467 and *Burnet* v. *Jergins Trust*, 288 U.S. 508. In all of these decisions the Supreme Court approved the Commissioners' regulations, which in substance provide that such incidental expenses as are paid for wages, fuel, repairs, hauling, etc., in connection with the exploration of property, drilling of oil wells, building of pipe lines and development of the property may at the option of the taxpayer be deducted as a development expense or charged to the capital account returnable through depletion.

The Commissioner's regulations contained in article 227, Regulations 65, and article 225, Regulations 69, further provide that " Both owners and lessees operating oil and/or gas properties will, in addition to and apart from the deduction allowable for depletion as hereinbefore provided, be permitted to deduct a reasonable allowance for depreciation of physical property, such as machinery, tools, equip-

ment, pipes, etc., so far as not in conflict with the option exercised by the taxpayer under article 225 [article 223 in Regulations 69]." Cf. *Graham-Loftus Oil Co.*, 27 B.T.A. 1301. In accordance with the Commissioner's regulations approved in the above cases, and the stipulation herein filed, 50 percent of the $90,000 original cost of the well is allocated to petitioner's depletable base returnable through depletion and the balance thereof is allocated to tangibles, returnable through depreciation.

5.

With reference to this issue, the facts show that the well was first drilled to a depth of 3,900 feet, but it was unsatisfactory because of water. It was then deepened at an additional expense of $45,000, which petitioner claims as a deductible expense. This was disallowed by respondent. The deepening of the well was as much a part of the well as the upper 3,900 feet; it added to the value of the lease, and it logically follows that if one part of the well is capitalized, the other should be also. *Sunburst Oil & Refining Co.*, 23 B.T.A. 829; *Consolidated Mutual Oil Co.*, 2 B.T.A. 1067. The stipulation shows that petitioner capitalized the $90,000 representing the cost of drilling the well to 3,900 feet, as it had the right to do under article 223, Regulations 62 (Revenue Act of 1921). This same regulation provides that an election once made under the option which it provides will control the taxpayer's returns for all subsequent years. Therefore the petitioner, having elected in 1922 to capitalize this $90,000 cost of drilling the well to a depth of 3,900 feet, cannot in 1923 abandon the election thus made and treat the $45,000 paid for deepening and completing the well in 1923 as a deductible expense. This $45,000 must be added to the depletable base, recoverable by depletion as provided in the Commissioner's regulations, approved in *United States* v. *Dakota Montana Oil Co., supra.*

6.

Issue six is stated by petitioner to depend upon whether or not the $45,000 paid for deepening the well is allowed as a deductible expense. If so, petitioner claims there is a net loss for 1923 which it is entitled to carry forward and use as a deduction in computing net income for 1924. We have held that the $45,000 in question under the circumstances of this case must be capitalized and added to the depletable base, returnable through depletion. Under these circumstances, there will be no net loss for 1923.

*Decision will be entered under Rule 50.*