*1070 OPINION.
Love:
The question presented is the nature of petitioner’s payments to holders of, or subscribers to, various classes of its stock and investment certificates, i. e., whether such payments are dividends or interest. The respondent has determined that all of the payments involved represent dividends and he has accordingly denied their deduction by the petitioner. The petitioner asserts that in each instance the payments represent interest and its argument is largely directed to distinguishing such payments from dividends as defined in the applicable revenue act. Both parties have briefed their contentions in considerable detail — to such an extent, in fact, that we do not feel justified in discussing each particular of the arguments presented.
*1071 The petitioner is a California corporation, conducting its business in that State and presumably in accordance with its statutory provisions. Among these provisions are the following from the Civil Code of California:
3633. Powers of building and loan associations. Building and loan associations as hereinafter in this title defined, shall have power to receive money and accumulate funds to be loaned, * * *; to permit shareholders and investors to withdraw part or all of their payments, investments or stock deposits, and to prescribe the terms and conditions of such withdrawal; to cancel shares of stock, the payments on which have been withdrawn; to receive money and to execute certificates therefor, which must specify the date, amount, rate of interest, and when the principle and interest are payable, and. also the withdrawal value thereof at the end of each year; * ⅜ * and shall have such further powers as may be specifically set forth under this title; * * *
There follows a requirement that the articles of incorporation shall state the purpose for which it is formed. Petitioner’s articles, as set forth in the findings, follow the prescribed form.
Section 634 of the Civil Code, supra, reads:
Capital. The capital of every such corporation shall be divided into shares of the matured or par. value of one hundred or two hundred dollars each, as provided by the articles of incorporation, and shall be paid in by the subscribers in the manner, provided by the by-laws. All such payments shall be called dues. Certificates shall be issued to each shareholder on the first payment of dues by him. Shares pledged as security for the payment of a loan shall be called pledged shares, and all others free shares. All shares matured and surrendered or cancelled, shall become the property of the corporation and may be reissued. The capital shall consist of the accumulated dues, together with the apportioned profits of the corporation, and shall be accumulated by the issuance of shares in any one or more of the following forms, viz.: “ installment shares,” “ full paid shares,” “ pass-book shares ” and “ guarantee stock.”
(a) Installment shares. Installment shares shall be either “serial” or “ permanent ” in form. When issued in “ serial ” form the periodical dues on shares in each series shall commence with the date of the issue of such series and the holder must pay such dues and such amounts per share and at such times as the by-laws may provide, and such payments must continue on each share until, with the profits allotted thereto, it reaches its matured value or is withdrawn or canceled. On all such issues the dividends shall be apportioned or credited equally to each share in each series. No share of a prior series shall be issued after the issue of shares in a new series, except by way of transfer. Shares issued in “ permanent ” form may be issued at any time and the dividends thereon may be credited in the passbooks of the members. Shares of either form may be issued in “ classes ” with a different periodical payment for each class designation, to be specified in the by-laws, and shall be issued with full participation in the profits subject to apportionment as dividends.
(b) Pull paid shares. Pull paid shares shall be shares upon which a single payment of dues amounting to one hundred or two hundred dollars per share shall be paid at the time of subscription and upon which the holder shall be entitled to either a full participation in the net profits or to an agreed rate of dividends not exceeding six per cent per annum, payable semiannually in cash, *1072 to be specified in tbe body of the certificate issued. All such shares may be issued in separate classes as to participation, under regulations to be provided in the by-laws and which must be fully set forth in or upon each certificate issued.
(c) Pass-book shares. Pass-book shares are shares which shall participate in the apportionment of .net profits and be credited therewith at a rate not less than seventy-five nor more than ninety per centum of the rate apportioned to installment shares, as the by-laws shall determine, and upon which the dues may be paid in at such times and in such amounts as the holder thereof may elect until said shares reach their matured value or are withdrawn. Such shares shall be withdrawable under rules to be provided in the by-laws and fully set forth in the pass-books issued. The matured value of this class of shares shall not exceed in volume twenty-five per centum of the matured value of all other shares in force. No membership fee, fine or forfeiture, shall be chargeable against such shares.
(d) Guarantee stock. Guarantee stock shall be stock, provided by the bylaws, to be set apart and sold as a fixed, permanent or guarantee capital, and shall be issued with full participation in the profits subject to apportionment as dividends. When any such stock has been once so set apart, sold and issued, it shall thereafter remain as a fixed, permanent and guarantee capital, and shall be subjected to all the conditions and liabilities attaching to the paid-in capital stock of other classes of corporations. Such guarantee stock shall protect and guarantee all other stockholders and creditors against any loss, and when once paid it must be kept unimpaired.
* * * * * * *
Article VI, section 2, of the petitioner’s by-laws of 1913 provides for the issuance of seven classes of stock, including three classes of “ installment stock ” and one class designated as “ permanent reserve stock,” the payments on which are not involved in this proceeding. The other three classes, designated in the by-laws as “ full-paid stock,” “ permanent stock ” and “ savings pass-book stock,” correspond, respectively, to “ full-paid shares,” “guarantee stock ” and “ pass-book ” shares as defined in the above quoted statute. In December, 1925, the petitioner ceased the issuance of savings pass-book stock. Thereafter it issued its “ installment certificates of investment ” as provided for by Article VII and Article VI of the by-laws of 1913 and 1926, respectively.
We will first discuss petitioner’s payments upon the “ full-paid ” stock and the “ pass-book ” shares, because, as will later appear, our determinations respecting them are founded upon virtually the same basis and differ from those relating to the petitioner’s payments upon “ certificates of subscription to permanent stock ” and “ installment certificates of investment.”
The petitioner’s argument is that the payments involved were interest and not dividends because they lacked at least three of the features which it contends characterize dividends. First, it is asserted that they were paid at a definite rate per cent, without regard to the earnings or profits, and that they were a charge upon the *1073 petitioner regardless of its income; second, that the deposits upon which these payments were made were not at the risk of the business; third, that payment was not dependent upon any action of the petitioner’s directors. In effect, therefore, the petitioner contends that the payees were creditors of the petitioner, rather than stockholders in the usually understood sense.
It seems unnecessary to quote authorities for the statement that where the statutes and by-laws authorize it and the stock certificates specify it, dividends may be paid at a definite rate per cent on certain classes of stock, even though other classes are paid at a higher rate. This is one of the characteristics of practically all preferred stock, yet such stock is at the risk of the business, and payments upon it are dividends. Another common feature of preferred stock is its right to be protected against losses by the common stock, i. e., to be saved from the burden of losses so long as there is common stock to bear that burden. Under provisions of sections 634 (a) and (d) of the Civil Code, supra, relating to “ installment stock ” and “ guarantee stock ” just such protection is afforded holders of “ full-paid ” and “ savings pass-book ” shares.
The fact that deposits on “ full-paid ” shares and “ savings passbook ” stock are at the risk of the business in a manner analagous to the investment of a preferred stockholder is further illustrated by the provisions of the General Laws of California, Deering, 1923, p. 360, sec. 9 [Statute of 1911 (Ex. Secs.), p. 7], relating to the liquidation of savings and loan associations whose business is being conducted improperly. Said section 9 provides that the building and loan commission shall take charge of the affairs and business of the association. If thereafter the superior court of the county approves the commissioner’s action the latter shall proceed to liquidate the business. In so doing the commissioner must inventory the assets and give notice of the proceedings to all persons having claim against the association “ as creditors, shareholders, members or investors.” After providing for payment of liquidating expenses, the section continues:
* * * from the net realization of assets, in excess of salaries and expenses, the Commissioner shall first pay all approved claims, other than claims to stockholders, shareholders and members.
* * * And thereafter he shall distribute and pay dividends, in liquidation to stockholders, other than guarantee, and to the shareholders and members, as fast as funds to the amount of ten (10) per cent of such approved claims are available therefor, and so continue until all the assets have been realized upon and a final dividend in liquidation shall be declared and paid. * * *
There is a further provision that when all approved claims have been paid and provision made for payment of all known but un *1074 claimed liabilities, the commissioner shall turn the remaining assets over to the holders of guarantee stock.
The fact that petitioner’s directors made no formal declarations of dividends on the full-paid stock and savings pass-book shares is not conclusively indicative of the character of the petitioner’s payments thereon.
Under the statute holders of full-paid shares were entitled to:
* * * either a full participation in the net profits or to an agreed rate of dividends not exceeding six per cent per annum, payable semi-annually in cash, to be specified in the body of the certificate issued.
The statute also provided that pass-book shares:
* * * are shares which shall participate in the apportionment of net profits at a rate not less than seventy-five nor more than ninety per centum of the rate apportioned to installment shares, as the by-laws shall determine.
Article YI, section 6, of the by-laws of 1913, provides that dividends on savings pass-book stock :
* * * will be declared out of earnings semi-annually, on the first days of January and July of each year, at a rate to be fixed by the Board of Directors— not to exceed five per cent per annum.
It appears, therefore, that under the statute payment of dividends on the two classes of stock mentioned was required so long as there were “ net profits,” and, so far as the pass-book shares are concerned, if any dividends were declared on the “ installment stock.” We think the petitioner’s payments to holders of full-paid stock and pass-book shares were dividends and we approve the refusal of the Commissioner to permit the deduction of such payments from petitioner’s income. Cf. Doan Savings & Loan Co., 12 B. T. A. 772.
In December, 1925, the petitioner, in order to obviate certain objections which the respondent had made to the allowance as interest deductions of payments upon the savings pass-book shares, discontinued the issuance of such shares, substituting therefor a form known as “ installment certificates of investment.” It does not appear that these certificates were substituted for outstanding pass-book shares, but only that they were issued thereafter in lieu of the latter. The installment certificates were issued in accordance with the provisions of Article YII of the by-laws of 1913 and Article YI of the by-laws of 1926. The deficiency letter covering the years 1925 and 1926, Docket No. 45215, makes no mention of petitioner’s payments upon “installment certificates of investment.”- We have found, however, that the petitioner’s payments upon such certificates in the years 1925 and 1926 are included in the amounts disallowed by respondent for those years as dividends upon the savings pass-book shares. There is nothing in the record upon which to determine what portion *1075 of the amount so disallowed by the respondent represents payments upon the installment certificates rather than payments on the savings pass-book shares.
It follows that even if we were to determine that petitioner’s payments upon the installment certificates represented interest, rather than dividends such as we have determined its payments upon the pass-book shares to be, we would be unable to determine the deduction to which it would be entitled by reason of such payments. Under such circumstances, the Board declines to pass upon the issue. James Couzens, 11 B. T. A. 1040; Livingston Worsted Co., 14 B. T. A. 700; Ohio Clover Leaf Dairy Co., 9 B. T. A. 433; and J. S. Fernandez et al., Executors, 15 B. T. A. 1369.
The remaining issue relates to petitioner’s payments to holders of “ certificates of subscription to permanent stock.” In 1914 the petitioner announced that it would accept subscriptions to an issue of 10,000 shares of its permanent stock. This stock was authorized by Article VI, section 5, of the by-laws of 1913, under the provisions of which it could be issued upon conditions “ controlled by the Board of Directors.” The conditions stipulated were that subscriptions might be paid in full, or in annual or monthly payments over a period of ten years; the stock would be set aside for the subscriber when the first payment was made, but would not be actually issued until 120 months after the subscription; subscribers would be allowed interest on their payments at 6 per cent per annum until issuance of the stock, and it would then “ share fully in losses, profits, surplus, profits from surplus or from any other source from which profits are derived.”
None of the permanent stock was issued prior to May 1, 1924, and none of the “ certificates of subscription ” to such stock was issued subsequent to that date. The respondent has determined that petitioner’s payments to holders of such certificates prior to May 1,1924, represent dividends. Subsequent to May 1, 1924, the permanent stock was issued and holders thereof received payments admitted by both parties to represent dividends. These dividends varied from 12 per cent in 1924 (subsequent to May 1) to 16 per cent in 1926.
The respondent asserts that when the stock was subscribed for and set aside pending payment, the subscriber became liable for the purchase price and entitled to the benefits of the stock, i. e., to a limited participation in the profits of the business prior to May 1, 1924, and to full participation thereafter. Upon consideration of the subscription contract and the certificate of subscription issued thereunder, we are of opinion that what holders of such certificates received was not a share in the profits of the business, but merely interest upon their payments on stock subscriptions. Neither the *1076 subscription contract nor the certificate of subscription purport to make the subscriber a stockholder in fraes&nti. Both specifically provide that he will not become a stockholder until at least 120 months after May 1,1914. What he received upon subscription was not a stock interest in the petitioner, but the right to such an interest in the future, conditioned upon payment in accordance with the terms of his subscription, and in addition the right to interest upon his accumulating payments prior to the issuance of his stock.
The distinction between petitioner’s payments to holders of full-paid stock and savings pass-books shares, and those to holders of certificates of subscription to permanent stock, lies in the fact that the two former classes are in fact holders of stock interests in the petitioner, while the latter class are creditors who, upon compliance with certain conditions, will become holders of stock interests.

Judgment will be entered wnder Buie 50.