DOLESE & SHEPHERD COMPANY, SYNDICATE NO. 3, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 41136.   Promulgated July 13, 1934.

*Merritt C. Bragdon, Jr., Esq.,* for the petitioner.
*Elden McFarland, Esq.,* for the respondent.

OPINION.

SMITH: This proceeding is for the redetermination of a proposed deficiency in income tax for 1924 in the amount of $31,552.40. The petitioner alleges that the respondent has erroneously held that it was an association taxable as a corporation in 1924 and that it realized a taxable gain upon the sale of certain property in that year. The material facts have been stipulated and, for the purpose of this decision, are summarized as follows:

The Dolese & Shepherd Co. is an Illinois corporation which for many years has been engaged in the business of quarrying and selling crushed stone. Its principal quarry and place of business is at Hodgkins, Illinois, a small town near Chicago.

About 1904 the Dolese & Shepherd Co. caused to be organized the Chicago & Illinois Western Railroad, an Illinois corporation, for the purpose of constructing a short line railroad to serve its quarry. The railroad was about 12 miles long, extending from the quarry at Hodgkins to a connection with the Pennsylvania Railroad in Chicago. The original stockholders of the railroad were principally stockholders of the Dolese & Shepherd Co.

The railroad company was unprofitable from the beginning, but its operation resulted in a great benefit to the business of the Dolese & Shepherd Co. It became necessary for the Dolese & Shepherd Co. to make substantial advancements to the railroad company to continue it in operation.

By 1916 the Dolese & Shepherd Co. had acquired 8,344 of the outstanding 10,000 shares of the railroad company's capital stock, $185,000 par value out of a total of $965,000 par value of bonds outstanding, and $89,000 par value of the railroad company's equipment trust notes. It also held promissory notes of the railroad company in the amount of approximately $350,000 on account of moneys advanced to it.

At the same time the Dolese & Shepherd Co. had borrowed more than $250,000 from banks for which it had pledged all of the railroad company's bonds and part of the trust notes, together with other collateral. The banks at that time were pressing the Dolese & Shepherd Co. for liquidation of the loan. As a result of those conditions the Dolese & Shepherd Co., Syndicate No. 3, the petitioner herein, was organized principally for the purpose of enabling the Dolese & Shepherd Co. to liquidate its bank loans. A syndicate agreement was executed on or about June 1, 1916. All of the stockholders of the Dolese & Shepherd Co. were asked to subscribe to the syndicate and about 24 of them did subscribe for a total of 512 syndicate shares.

The purposes of the syndicate were stated in paragraph III of the syndicate agreement as follows:

Whereas, growing out of the investment of so large an amount of its capital in said railroad securities, the Dolese & Shepherd Company has been obliged to borrow from banks a considerable amount of money, for which it is still indebted, and which it has secured by depositing as collateral among other things the said $185,000 par value of railroad bonds, and $66,000 par value of said railroad equipment notes; and it is now desired by the parties hereto to provide a fund to be used in purchasing from said company its holdings of said railroad stock, and also so much as is practicable of its said railroad securities, and also if it be found practicable to provide a means of restoring to its treasury the amount of its said advances to the railroad; and also to secure for the subscribers to this syndicate the advantages and benefits hereinafter stated.

The syndicate was capitalized at $400,000, divided into 800 units or shares of $500 each. Additional shares as determined by the syndicate managers were to be issued to defray legal expenses in connection with the organization. Three individuals were designated as syndicate managers. In paragraph XIII of the syndicate agreement the syndicate managers were assigned powers and duties as follows: to collect and receive subscriptions to the syndicate and to issue certificates of interest; to purchase the bonds and equipment trust notes of the railroad company; to secure an assignment to the syndicate of the outstanding shares of stock of the railroad company; to maintain a general supervision over the affairs and management of the railroad company with an idea of enhancing its value; and to sell, lease, or

otherwise dispose of the railroad company's stock and securities or physical properties.

Provisions were made in paragraph XIV for the election of a board of reference composed of five members.

Pursuant to the syndicate agreement, 300 shares of proportionate interest in the syndicate were issued to the Dolese & Shepherd Co., which shares were limited in their right to participate in the management of the syndicate. Other individual subscribers, all of whom were stockholders of the Dolese & Shepherd Co., subscribed for 500 shares of the par value of $500 per share. Of such shares 497 were issued to the individuals who paid in 80 percent of their subscriptions or $400 per share. Fifteen additional shares were issued for legal services in connection with the syndicate organization.

The Dolese & Shepherd Co. transferred to the syndicate the 8,344 shares of capital stock of the railroad company and the promissory notes of that company aggregating approximately $350,000. The individual subscribers paid into the syndicate in six quarterly installments commencing October 1, 1916, approximately $198,800 in cash, of which $196,536.75 was paid to the Dolese & Shepherd Co. in exchange for $185,000 par value of the railroad company's bonds at 75 percent of their par value, and $64,207.50 par value of the equipment trust notes of the railroad company at 90 percent of their par value. These moneys were used by the Dolese & Shepherd Co. to reduce its loans with the banks. Thereafter, pursuant to the syndicate agreement, the syndicate received the interest on the bonds and equipment trust notes of the railroad company and currently distributed it to the individual subscribers.

Also, pursuant to the syndicate agreement, the Dolese & Shepherd Co. later transferred other obligations of the railroad company to the syndicate for additional advances made to the railroad company in the amount of approximately $48,500. The railroad company continued to sustain operating losses which were paid by the Dolese & Shepherd Co. up to the year 1924. In 1922 the railroad company turned over to the Dolese & Shepherd Co. $291,000 par value of 7 percent noncumulative preferred stock in satisfaction of an indebtedness in that amount, which stock the Dolese & Shepherd Co. transferred to the syndicate. By February 1, 1924, the railroad company was further indebted to the Dolese & Shepherd Co. for moneys advanced in the amount of $126,104.51, which indebtedness the Dolese & Shepherd Co. likewise assigned to the syndicate.

From time to time during the period 1916 to 1924 the syndicate made efforts to sell the capital stock and securities of the railroad company, but was unable to find a purchaser until 1924. In that year

the syndicate sold to the Commonwealth Edison Co. and the Peoples Gas Light & Coke Co. the following capital stock, securities, and indebtedness of the railroad company:

   (a) 10,000 shares common stock (entire outstanding shares).
   (b) $291,000 par value preferred stock (entire outstanding shares).
   (c) $89,890 par value equipment trust notes.
   (d) $398,500 face value promissory notes.
   (e) $126,104.51 indebtedness in open account.

The above named assets were all of the assets owned by the syndicate except the $185,000 par value bonds of the railroad company and a small amount of cash. In exchange for such assets the syndicate received $520,500 in cash and $200,000 of promissory notes. The syndicate also acquired the balance of the outstanding stock of the railroad company and the equipment trust notes of the railroad company, which were held by the Dolese & Shepherd Co., and transferred the same to the purchasers. It also paid off certain other obligations of the railroad company as required in the sales agreement. Thereafter, and in 1924, the syndicate distributed to the Dolese & Shepherd Co. in full payment for its interest in the syndicate $279,213.37, including the aforesaid $200,000 of promissory notes. It sold $7,000 par value of the railroad company's bonds at 75 percent of their par value and distributed to the individual subscribers pro rata the remaining $178,000 par value of bonds of the railroad company and $303,454.27 in cash. At that time the certificates representing the syndicate shares were surrendered by the subscribers and canceled. The only asset retained by the syndicate was cash in the amount of approximately $4,000, which it held for contingencies. The syndicate engaged in no other activities whatever until 1926 when, pursuant to the aforesaid sale agreement, it received an additional amount of $1,740.40 from the purchasers of the railroad company's stock and securities. Upon its receipt this amount, together with the remaining cash on hand, amounting in all to $6,130.25, was distributed to the individual subscribers. The syndicate has since engaged in no activities whatever except to contest the Commissioner's assessment for income taxes for the calendar year 1924.

The syndicate had three managers, as provided in the syndicate agreement. The managers held no formal meetings and kept no formal record of the syndicate proceedings. A board of reference was elected in 1921 for the purpose of selecting a successor to one of the syndicate managers. In 1924 another board of reference was elected to approve the sale of the railroad company's stocks and securities. No meeting of the syndicate's subscribers was ever held until 1928, when the subscribers met to consider the tax question raised in this proceeding.

The syndicate never engaged in any business activities except those described above. It had no office or place of business and incurred only nominal expenses. Prior to the sale in 1924 the syndicate never owned any property except cash and the stocks and securities of the railroad company which it acquired from the Dolese & Shepherd Co.

No income tax return was ever filed on behalf of the syndicate as an association or a corporation. All or nearly all of the syndicate subscribers reported their respective profits from the sale of the syndicate property in their individual income tax returns. The respondent has determined that the syndicate was an association taxable as a corporation in 1924 and that the aggregate profits of all the individual subscribers constituted the taxable profit of the syndicate.

As a result of the entire syndicate transaction the Dolese & Shepherd Co. sustained a net loss from its advances to the railroad company of $654,974.92, which was allowed by the respondent as a deduction in computing its income tax for 1924. This loss of the Dolese & Shepherd Co. was substantially greater than the aggregate profits of the individual subscribers to the syndicate. In the determination of the gain to the syndicate upon the sale in 1924 the respondent did not consider or determine the cost to the syndicate of the 10,000 shares of common stock, the $291,000 par value preferred stock, the $398,000 face value of promissory notes, or the $126,104.51 open account of the railroad company which had been transferred to the syndicate by the Dolese & Shepherd Co. It is agreed that there is no deficiency due from the petitioner for 1924 unless it is to be classified as an association taxable as a corporation.

It appears from the foregoing statement that the petitioner was created primarily for the purpose of rendering financial assistance to the Dolese & Shepherd Co. by liquidating that company's holdings in the stocks and bonds and other indebtedness of the railroad company and paying off the obligations of the Dolese & Shepherd Co. against which these properties had been pledged, and that the petitioner never engaged in any other form of business. This the respondent concedes, but he contends that, since the purpose of the syndicate and of the individual syndicate members was nevertheless to make a profit, which was to be distributed to the beneficial shareholders, and since a profit was actually made and distributed, the syndicate should be classified as an association taxable as a corporation.

With this contention we cannot agree. The courts and this Board have held in numerous cases that where a syndicate or trust was organized primarily for the purpose of liquidation rather than for the purpose of engaging in a business enterprise, and the usual

1176

corporate forms of organization and operation were not observed, the syndicate or trust was not an association subject to tax as a corporation. See *C. H. Atherton et al., Trustees*, 19 B.T.A. 1172; affd., 50 Fed. (2d) 740; *White* v. *Hornblower*, 27 Fed. (2d) 777; *Blair* v. *Wilson Syndicate Trust*, 39 Fed. (2d) 43; affirming 14 B.T.A. 508; *Lucas* v. *Extension Oil Co.*, 47 Fed. (2d) 65; affirming 16 B.T.A. 1028; *Lansdowne Realty Trust* v. *Commissioner*, 50 Fed. (2d) 56; *Tyson* v. *Commissioner*, 54 Fed. (2d) 29; *Dunbar* v. *Commissioner*, 65 Fed. (2d) 447; *Commissioner* v. *Morriss Realty Trust No. 2*, 68 Fed. (2d) 648; affirming 23 B.T.A. 1073.

The instant case is distinguishable from those in which a group of individuals organize to carry on a continuing business such as prospecting and drilling for oil (*Monrovia Oil Co.*, 28 B.T.A. 335; *G. E. Jordan, Trustee*, 28 B.T.A. 372), or purchasing and selling land contracts for profit in repeated transactions (*Edward Leszczynski, Trustee*, 29 B.T.A. 551), or buying and selling securities for profit in repeated transactions (*Investment Trust of Mutual Investment Co.*, 27 B.T.A. 1322), or purchasing, developing, and selling real estate (*Trust No. 5522 and Trust No. 5644, Bellehurst Syndicate*, 27 B.T.A. 1250; *G. F. Sloan*, 24 B.T.A. 61; affd., 63 Fed. (2d) 666; *Adelaide Park Land*, 25 B.T.A. 211; *Joseph E. Swanson et al., Trustees*, 29 B.T.A. 1123). See also *Cyclops Iron Works*, 25 B.T.A. 603; *Twin Bell Oil Syndicate*, 26 B.T.A. 172; affirmed upon this point, *Twin Bell Oil Syndicate* v. *Helvering*, 70 Fed. (2d) 402.

The petitioner here was never engaged in carrying on any business. It was in purpose and in fact purely a liquidating venture. The evidence indicates that the syndicate members never expected to realize any profit from the syndicate's operations and probably would not have done so but for the unexpected and fortuitous circumstances which resulted in the sale of the railroad's securities in 1924.

As to the methods and forms of procedure followed by the petitioner, there were no officers corresponding to those which usually serve corporations, no meetings were held by the owners of beneficial interests, no office was maintained or formal records kept, only nominal expenses were incurred, and, in short, none of the usual forms of corporate procedure were followed. See *Commissioner* v. *Brouillard*, 70 Fed. (2d) 154; affirming *Pryor & Lockhart Development Co.*, 26 B.T.A. 1054, and *Shepherd Syndicate*, 26 B.T.A. 1062.

Upon authority of the cases cited above we hold that the petitioner was not taxable as a corporation in 1924.

Reviewed by the Board.

*Judgment will be entered for the petitioner.*

MARQUETTE dissents.