MOULTON GREEN, TRUSTEE OF THE HARRIET M. BRYANT TRUST ESTATE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 19309.   Promulgated December 9, 1931.

*Bruce Barnett, Esq.*, for the petitioner.
*F. B. Schlosser, Esq.*, for the respondent.

OPINION.

LANSDON: The controversy involved in this appeal relates to a deficiency in income tax of $10,742.81, and penalty of $2,685.70, for failure to file a return, which the respondent asserted against the trust estate of Harriet M. Bryant, deceased, for the calendar year 1923.

During her lifetime, Harriet M. Bryant owned real and personal property located in Kansas City, Mo., valued in excess of $1,000,000. Included in such real estate holdings were two improved properties situated in the business center of Kansas City. One was located at the southwest corner of Eleventh and Main Streets; the other about one block north at 1016–1018 Main Street. In February, 1917, she and her husband, John Bryant, entered into a written lease with one

Louis Oppenstein, whereby they leased to the said Oppenstein the property first above mentioned, for a period of fifty years, beginning July 1, 1917. The terms of this lease provided, among other things, that the lessee should, within certain limits of time and in accordance with building specifications otherwise provided for, remove a three-story building then on said property and build in its place and stead a new business building which should belong to and become a part of such real estate when completed. That the whole cost of the removal of the old and the building of said new building should, in the first instance, be paid by Oppenstein; but, that as to so much of the cost of the new building as exceeded the sum of $30,000, the agreed value of the old building, said lessee should be entitled to reimbursement out of future rents due from him to lessor. These reimbursements were provided for in the lease by a stipulation which allowed the lessee to deduct each month from the rent to be paid by him an amount equal to one-twelfth of 5 per cent of the total amount of his reimbursable expenditures, with interest at the rate of 5 per cent per annum.

In accordance with his contract, Oppenstein completed the building provided for on September 1, 1918. On account of high prices of material and labor, due to the war which intervened, the cost of the building was greatly in excess of the amount contemplated by the parties and exceeded the value of the old building by $461,704.70. The result is that at no time since the completion of said building was monthly rental due under the lease equal to the amount which the lessee has, at all times, been entitled to withhold for repayment of his expenditures with interest; and no rent payments, except by way of credits, as aforesaid, have been made to the lessor since August, 1918.

Harriet M. Bryant died April 8, 1920, leaving a will, which, after disposing of all of her personal property, provided that any real estate of which she might die seized should be held in trust until 21 years after the death of the last of her children. Two terms of trusteeship were provided in the will. The first, which may be referred to as the preliminary period, was to begin at the death of the testator and continue for sixty days. During this time the trustees were to manage the estate, collect income, pay debts, and, after payment of a bequest of $1,000 to the husband, pay the remainder of all proceeds over to the administrator for distribution as personal property. Five trustees were named in the will to serve during this term, among whom were Carl Herbert Bryant, William H. Schutz and Gustave William Bachman of the present board of trustees.

In and for the term beginning sixty days after the testator's death, the testator's five children, who were beneficiaries of the trust created, were given the right to select the trustees who should succeed to the trust, and were also given a voice in its administration. The present petitioning trustees are successors in such trust and the duly qualified trustees of said estate.

Among the several powers given to the last named trustees under the will was the power, having first discharged all costs of operation, including repairs, taxes (both general and special) on the property, and all interest on indebtedness of the estate and insurance of all kinds, and costs of the execution of the trust, to distribute among designated beneficiaries the net income derived from rent, interest on loans and securities in the estate. They were also empowered, under certain conditions, to sell the trust real estate and to use the proceeds in payment of estate debts, or to reinvest it in other property. The provision relating to the disposition of such proceeds is found in paragraph 12 of the will and is as follows:

And all proceeds arising from the sale of any real estate of which I shall die seized or possessed * * * shall become and be a part of the principal of the trust estate and the same, or any part thereof, may be applied to the discharge of any indebtedness against my estate to the extent that the personal property of which I shall die seized shall not be sufficient to discharge such indebtedness or to discharge any mortgage or deed of trust upon any such real estate, or the same may be reinvested in enlarging or improving buildings * * * or in the purchase of other real estate or of bonds or obligations of the United States or of some state, county or municipality within the United States * * * *and any money so arising, that is from the sale of real estate or from money derived by means of any mortgage, deed of trust or other encumbrance, may be reinvested by the trustee as above authorized and not otherwise.* [Italics supplied.]

During the years 1921, 1922 and 1923, the properties of the trust estate depreciated in the respective amounts of $17,974.50, $21,403 and $20,503. During these same years the trustees, after payment of all necessary expenses, distributed to the beneficiaries of the estate, in the order stated, $33,825, $36,755 and $34,295, which was the entire net income of the estate for these years, with the exception of the profit derived from the sale of real estate, hereinafter mentioned, in 1923. No income-tax return was filed or income tax paid in behalf of the estate for either of the three years above mentioned.

In 1923 the petitioner sold the property at 1016–1018 Main Street to Marcus Fetcheimer for $297,155.15, and the respondent determined that it derived a taxable profit of $114,590 from the transaction. In computing this profit the respondent fixed the value of the property on June 8, 1920 (the date of decedent's death), at $184,656.24, to which he added $608.90 for improvements made after that date.

This cost total he reduced by $2,700 on account of depreciation sustained during the three years.

In the amended petition filed by these trustees some twenty-one pages are devoted to "so-called" assignments of error, which are separately grouped and alphabetically lettered from "A to W," inclusive. These groups are further multiplied by innumerable subdivisions which convert the pleadings into an endless maze of baffling repetitions. At the hearing, however, the petitioner clarified its position through a verbal statement from its counsel and submitted its cause of action for decision upon the following proposals of law and facts.

First, petitioner claims that it is entitled to a deduction of $55,598.54, from the profit of $114,590, realized in 1923 on the sale of the 1016–1018 Main Street property, because of a decree rendered in the Circuit Court of Jackson County, Missouri, in 1924, which compelled it to make distribution of that amount out of such cash proceeds to the beneficiaries of the trust in lieu of rent, otherwise distributable to them, but withheld by Oppenstein under the terms of his lease.

Second, that the respondent erred in using the date of the decedent's death as the basic date for determination of the cost to it of the property sold; alleging that the true date of its acquisition of the property was the beginning of the second term of trusteeship—sixty days after said death, at which date the property was of greater value than at the prior date used by respondent.

Third, that the net profit from said sale, as reduced by the adjustments above suggested to the sum of $48,444.44, was distributable income to the five beneficiaries of the trust, and, as such, not taxable to it.

Fourth, that by reason of the depreciation sustained by the trust property in prior years, as above set forth, it suffered net losses which, in the circumstances, it had a right to carry forward in reduction of its taxable income, by reason of which, considering further the depreciation suffered in 1923, in no event was it liable for income tax in said year.

In respect to the petitioner's first contention, it would seem clear from a reading of the will that the profit from the sale of the real property in question constituted capital gain, which the testator intended to be retained and added to the corpus of the trust estate. The only provisions in the will pertaining to the disposition of the proceeds arising from the sale of real estate are those hereinbefore quoted from paragraph 12, which direct in plain language that all

such must be reinvested as directed. To requote, the exact language is that they " may be reinvested by the trustees as above authorized and not otherwise." This limitation upon the trustees clearly precludes them from treating the profit from the sale of trust real estate as distributable income, as contended by the petitioner. We must conclude then that it constituted capital gain to the estate and was taxable as such in the year received.

The proceedings in the Missouri courts a year later are in no way material to the issue here. The court there found that during a fifty-month period from the death of Harriet M. Bryant to June 8, 1924, rents accrued under the Oppenstein lease in the amount of $105,458.33, and that under the terms of the will such accrual was income to the estate distributable to the beneficiaries. For reasons not material here the beneficiaries had asked for only $55,598.04, and this amount the court ordered should be distributed from any cash then in the corpus of the estate. The fact that the proceeds of the sale of another piece of real estate were the only funds available for distribution under the decree of the court in no way affects the taxability of the capital gain realized from that sale.

From and after the death of Harriet M. Bryant the rentals due under the Oppenstein lease were income to the estate, even though not received in cash, and the District Court of Jackson County found that under the terms of the trust instrument such income was distributable to the beneficiaries. If returned by the trustee in gross income, it was a proper deduction therefrom to the extent that it was received in any taxable year, since, under section 219 (d) of the Revenue Act of 1921, the distributable income of a trust or estate, whether distributed or not, is taxable to the beneficiaries ratably to their shares therein. It is obvious, therefore, that there is no relation between the taxable capital gain not distributable and distributable income derived from rents. The entire deficiency asserted herein is based on the capital gain resulting from the sale of the property at 1016–1018 Main Street. The respondent's determination with respect thereto is affirmed. From our findings in respect to this issue, it follows that the petitioner's third contention must likewise be denied.

In respect to petitioner's second contention, we are unable to find from the terms of the will that the testator intended to create two separate trusts, the second succeeding the first sixty days after death. Even if we should hold that the petitioner is correct in respect to such basic date for valuation, we would be unable to hold that the respondent erred in the value fixed by him, since the petitioner has

not produced evidence to establish a greater value, or to overcome the presumption of the correctness of the respondent's determination as, under the law, we are bound to indulge. Our decision, therefore, on this contention must be in favor of the respondent.

Petitioner's fourth contention relates to its claim of right to accumulate and deduct from its 1923 income net losses sustained in 1921 and 1922. In connection with this issue we have only the stipulation of the parties, which shows that in each of these years the trust properties sustained depreciation in certain stated amounts; also, that it distributed income to the beneficiaries in the same periods. There is an absence of any proof to show a net loss in either of these years, but, in view of the distributions made, much to indicate that it had taxable gains in each. On this issue, for lack of proof, we must hold against the contentions of the petitioner.

The further question, respecting the 25 per cent penalty imposed by the respondent upon the petitioner for failure to file a return for 1923, remains to be considered. The situation in this case is governed by section 3176 of the Revised Statutes, as amended by section 1003 of the Revenue Act of 1924, which provides that:

* * * In case of any failure to make and file a return or list within the prescribed time prescribed by law * * * the Commissioner shall add to the tax 25 per centum of its amount, *except that when a return is filed after such time* and it is shown that the failure to file it was due to reasonable cause and not willful neglect, no such addition shall be made to the tax. * * * [Italics supplied.]

It is noted that under this provision, where no return is filed, the imposition of the penalty is mandatory upon the Commissioner of Internal Revenue, and that it is only " when a return is filed after such time," and it is shown that the default was due to reasonable cause and not willful neglect, that an exception is made. In the case at bar no return whatever was filed for 1923, and the explanation by counsel at the hearing that the trustees " fell into the rut " of not regarding any of the trust income as taxable, could not avail were we ever so ready to accept it. It is obvious that the action of the respondent in imposing these penalties must be approved. *John B. Nordholt,* 4 B. T. A. 509; *Cheney D. Washburn,* 7 B. T. A. 483; *John T. Sline,* 9 B. T. A. 1222; *Edwin T. Foreman,* 10 B. T. A. 981; *Southern Ice & Fuel Co.,* 10 B. T. A. 1213; and *Beam* v. *Hamilton,* 289 Fed. 9.

*Decision will be entered for the respondent.*