NEWBERRY LUMBER & CHEMICAL COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 68511.   Promulgated October 3, 1935.

*William D. Bonthron, Esq.,* for the petitioner.
*Chester A. Gwinn, Esq.,* for the respondent.

OPINION.

VAN FOSSAN: This proceeding was brought to redetermine a deficiency in the income tax of the petitioner for the period from June 1, to December 31, 1929, in the sum of $58,498.32.

The petitioner alleges the following errors:

(1) Failure of the respondent to hold that the formation of the petitioner corporation and the acquisition by it of properties of the Charcoal Iron Co. of America at a foreclosure sale on behalf of depositing bondholders of that company, constituted a reorganization as contemplated by sections 112, 113, and 115 of the Revenue Act of 1928.

(2) Refusal of the respondent to hold that the cost to the petitioner of the properties so acquired was their fair market value on June 1, 1929, rather than the relatively nominal sum paid for them by the bondholders' protective committee.

(3) Improper valuation of inventories.

The facts were stipulated and so far as material to the issues are substantially as follows:

The petitioner is a corporation, organized on May 25, 1929, under the laws of the State of Delaware, with its principal place of business at Newberry, Michigan. Its business is the manufacture of pig iron, methanol, acetate of lime, and lumber.

The Charcoal Iron Co. of America, hereinafter called the Charcoal Co., had outstanding as at September 1, 1925, $3,298,500 face value first mortgage 8 percent gold bonds dated November 1, 1921, due November 1, 1931. On September 1, 1925, it issued a notice to the effect that it was in default with respect to the provisions of the trust mortgage indenture and that it would be unable to meet its bond interest indebtedness due on November 1, 1925, or redeem $100,000 face value bonds as required by the trust indenture.

At the request of various holders of first mortgage bonds of the Charcoal Co., a bondholders' protective committee was organized for the purpose of protecting the interests of the bondholders and on September 1, 1925, this committee addressed a communication to the holders of first mortgage bonds which requested the deposit of their holdings under the terms of a bondholders' protective agreement.

On March 10, 1926, by order of the United States District Court for the Western District of Michigan, Northern Division, the Charcoal Co. was placed in receivership and the receivers operated the business of the company from that date to May 31, 1929.

During the period from March 10, 1926, to May 17, 1929, certain of the more important properties of the receivership, such as pig iron furnaces and chemical plants at Ashland, Wisconsin, and Boyne City and Manistique, Michigan, a mine at Bessemer, Michigan, a steamer and a sawmill, were sold or disposed of by the receivers, and the proceeds thereof were properly accounted for to the court.

On April 10, 1929, the bondholders' protective committee published a " Plan of Reorganization or Readjustment."

The books of the receivership show that on March 1, 1926, the property account stood at $12,004,646.55, less depreciation and depletion reserve of $3,231,299.33, or a net of $8,773,347.22, while as of May 31, 1929, it had been reduced to $3,898,200.04 by sales and properly apportioned depreciation and depletion reserves. The assets were further increased by cash, investments, inventories, etc., so that the book deficit on March 1, 1926, was $2,578,890.34 and on May 31, 1929, was $1,520,204.69. On the former date the capital stock was $4,056,600 and the first mortgage bonds $3,298,500, with accrued interest thereon of $223,418.40, together with other liabilities aggregating over $680,000. On the latter date the capital stock had been written down to $8,056.60, while the first mortgage bonds remained at $3,298,500 with $1,219,283.18 interest due thereon, and other liabilities listed at over $1,900,000.

On May 17, 1929, the court confirmed the sale of the remaining assets (principally represented by a pig iron furnace, chemical plant, and sawmill at Newberry, Michigan, and timber and timberlands) in the receivership estate to the protective committee representing the depositing bondholders of the Charcoal Co. Those assets consisted of mortgaged property, such as plants and equipment, timber and timberlands purchased for $400,000, and unmortgaged property such as tools, supplies, and other personal property, including cash and inventories, purchased for $140,000.

Out of a total of $3,298,500 face value bonds of the Charcoal Co. outstanding there were deposited with the bondholders' protective committee in pursuance of the " Plan of Reorganization or Readjustment " bonds of a face value of $3,060,500, leaving nondepositing bondholders owning $238,000 face value of bonds.

Aside from the receivership expenses the claims against the receivership estate comprised open accounts aggregating $6,269.35 and $3,298,500 face value of bonds outstanding plus accrued interest thereon to May 17, 1929.

The court decree and order of sale dated May 8, 1928, as amended by a supplemental order dated April 2, 1929, provided that the payment for the unmortgaged property would be required to be satisfied by a cash payment sufficient to cover specified costs and

expenses and as to the balance the purchaser had the option of paying either cash or depositing bonds of the Charcoal Co. at such price or value as should be equivalent to the sums which would be payable thereon out of the proceeds of the sale.

The terms of the foreclosure sale as confirmed by the United States District Court provided that the bid of $400,000 could be satisfied by the delivery of at least $2,993,500 face value bonds of the Charcoal Co., except that a cash payment, subsequently determined to be $36,986.13, would be required for distribution to the holders of undeposited bonds and that the bid of $140,000 for the unmortgaged property was to be paid in cash in accordance with the terms of the bid.

After payment of legal fees arising out of the receivership, the settlement of unsecured creditors' claims of $6,269.35 for $232.24 and the proportionate payment to the bondholders who did not deposit their bonds under the reorganization agreement, there was left $275,764.60 which accrued to the depositing bondholders and was paid over to the Newberry Lumber & Chemical Co.

The bondholders' protective committee, having purchased the aforesaid properties at the foreclosure sale on May 17, 1929, and having organized the petitioner corporation on May 25, 1929, caused the properties to be transferred by deeds of conveyance and bills of sale on May 29, 1929, directly to the petitioner, which thereupon issued to the bondholders' committee its demand note for $3,287,000 dated June 1, 1929, and 13,000 shares of no par value common stock.

On June 22, 1929, the bondholders' protective committee amended the " Plan of Reorganization or Readjustment " dated April 10, 1929, so as to change the capital structure of the petitioner by providing for the issue of first mortgage bonds and preferred and common stock, all of which were turned over to the bondholders' protective committee in exchange for the stock and demand note of the petitioner held by the committee, and the bonds and stock were thereafter distributed to the depositors of the old bonds of the Charcoal Co. in proportion to their respective interests.

The assets acquired by the petitioner in exchange for its bonds and stock issues, when it commenced business as of June 1, 1929, were entered on its books at values determined as follows:

The plant properties were valued as to the buildings and equipment and sawmill at Newberry, Michigan, at appraised cost of reproduction as at December 28, 1926, plus subsequent additions at cost, less an allowance for depreciation. The appraisal was made by independent appraisers, and the aggregate amount thereof was $1,373,930.58.

The timber properties were valued at $1,045,263.52 by applying a unit rate, representing the March 1, 1913, value of timber, to esti-

154

mated reserves of timber as at June 1, 1929. The estimated reserves as at June 1, 1929, were computed by subtracting from estimated reserves as at August 1928, based on a cruise made at that time, the amount cut from the properties during the intervening period.

The inventories were entered on the books at the lower of estimated cost of production or market value and aggregated $475,885.17.

Remaining current assets were valued at estimated realizable values. The entire assets of the petitioner were valued on the books at $3,293,989.41, computed as above set forth.

The debts assumed under the decree of foreclosure were entered on the books at the full amount thereof, and totaled $135,948.90.

The inventories of the Newberry Lumber & Chemical Co. as at June 1, 1929, and December 31, 1929, were valued by the company for financial purposes and for the purpose of determining its taxable income in its tax return as filed for that taxable period, at the lower of cost of production or market values, while the respondent has used as at June 1, 1929, a valuation based upon the relation of the bid-in price to the book value adopted, representing 16.39 percent of the initial value set up.

The petitioner contends that (1) a reorganization was effected through the purchase of the Charcoal Co.'s assets at a foreclosure sale and their transfer to the petitioner for its entire issue of stock and bonds, (2) the fair market value of such assets is the true measure of their cost to the petitioner, and (3) that, hence, inventories were erroneously valued by the respondent and depletion and depreciation on the capital assets were wrongly computed by him.

The respondent's position is that there was no reorganization as claimed by the petitioner; that the correct basis to the petitioner of the assets acquired by it is their cost to the petitioner's transferor, the bondholders' protective committee; and that the cost to that transferor is the purchase price named as the consideration of the sale and paid in cash and bonds of the Charcoal Co.

We agree with the respondent that there was no reorganization. The continuity of interest required to support the petitioner's contention was not present. The stockholders of the Charcoal Co. were eliminated entirely and new interests, namely, the bondholders, acting through their representative, the protective committee, took possession and control of the assets of the old company. *Pinellas Ice & Cold Storage Co.* v. *Commissioner*, 287 U. S. 462; *Cortland Specialty Co.* v. *Commissioner*, 60 Fed. (2d) 937; certiorari denied, 288 U. S. 599; *Suncrest Lumber Co.*, 25 B. T. A. 375. We also are in accord with the respondent's position that the basis to the petitioner for gain or loss and depreciation and depletion is the cost to its transferor, the bondholders' protective committee. We do not concur in the respondent's contention that under the facts in this

case the price bid and paid by the committee for the property fixed its cost for all purposes beyond the right of the taxpayer to question the same. In *Suncrest Lumber Co., supra,* a case bearing much similarity to the present case, it was specifically held that it was open to either party to submit evidence to demonstrate that this figure did not represent true cost. In the *Suncrest* case both parties availed themselves of this opportunity and submitted additional evidence. In the instant case, the record before us does not justify us in finding any figure in excess of the sale price of $540,000 as the total value of the assets except as to the inventories of current assets. The stipulated facts do, however, justify a holding that the Commissioner erred in his treatment of the inventories. It is stipulated that the inventories were valued and entered on petitioner's books at cost of production, or market value, whichever was lower. The inventories so valued amounted to $475,885.17. In our opinion this figure is adequately established by the stipulation as the true value and should have been used by respondent as the inventory value on June 1, 1929. In the recomputation of the deficiency, if any, this figure should be so used.

*Decision will be entered under Rule 50.*