IRENE O. KITSELMAN, EXECUTRIX, ESTATE OF C. M. KITSELMAN, DECEASED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 77812. Promulgated November 19, 1935.

*J. Murray Chenoweth, Esq.*, for the petitioner.
*Hugh Brewster, Esq.*, for the respondent.

OPINION.

LEECH: The petitioner, a resident of Muncie, Indiana, and the duly qualified and acting executrix of the estate of C. M. Kitselman, who died November 27, 1930, a resident of Indiana, seeks redetermination of an income tax deficiency in the amount of $3,451.30 asserted against C. M. Kitselman, deceased, for the year 1930. Petitioner further seeks the determination of an overpayment of $572.67 in the decedent's income tax for 1930.

Certain adjustments made by respondent, in his determination, are not in dispute. The sole error assigned is, the respondent's disallowance of " any deduction from gross income for 1930 for a loss sustained by the taxpayer in that year on $27,000.00 par value of bonds."

The facts were stipulated. A resume of them will suffice here.

On January 1, 1930, petitioner's decedent owned $27,000 par value of bonds which had a total March 1, 1913, value and/or cost basis to him of $20,500 as follows:

$9,000 par value bonds of Chicago, South Bend & Northern Indiana Ry. Co., acquired prior to March 1, 1913, at a cost not in excess of $9,000 and having a March 1, 1913, fair market value of_____ $9,000
$8,000 par value bonds of the same company acquired in 1924 at a cost of_ $4,000
$4,000 par value bonds of La Porte & Michigan City Traction Co. acquired in 1914 and 1924 at a cost of_____ 3,000
$6,000 par value bonds of Northern Indiana Ry. Co. acquired in 1924 at a cost of_____ 4,500

The Chicago, South Bend & Northern Indiana Ry. Co. (hereinafter referred to as the C. S. B. & N. I. Ry. Co.) was incorporated in 1907 under the laws of Indiana. It owned and operated a system

of electric interurban and street railways. In 1927 its funded debt consisted of a principal and three underlying bond issues as follows:

Principal issue:
    C. S. B. & N. I. Ry. Co. first mortgage 5 percent 30-year gold
        bonds, due 1937, outstanding in principal amount_____ $3, 089, 000
Underlying issues:
    La Porte and Michigan City Traction Co. (hereinafter referred
        to as the L. P. & M. C. T. Co.) 5 percent 25-year first mort-
        gage gold bonds, due 1930, outstanding in principal amount\_\_\_ 312, 000
    Northern Indiana Ry. Co. (hereinafter referred to as N. I. Ry.
        Co.) first consolidated 5 percent gold bonds, due 1936, out-
        standing in principal amount_____ 588, 000
    Indiana Railway Co. (hereinafter referred to as I. Ry. Co.)
        first mortgage 5 percent gold bonds, due 1930, outstanding
        in principal amount_____ 426, 000

Each of the foregoing bond issues was secured by a separate mortgage on some part of the property then owned by the C. S. B. & N. I. Ry. Co., which was liable for the total debt represented by all of those bond issues. On July 1, 1927, the C. S. B. & N. I. Ry. Co. defaulted in the payment of interest due on that date on the first three named bond issues and all interest payments due thereafter. Petitioner's decedent did not own any of the I. Ry. Co. bonds on which there was no default. A receiver for the C. S. B. & N. I. Ry. Co. was appointed by the Federal District Court on July 9, 1927. The receiver operated the company's properties until about February 1930.

Under date of July 21, 1927, a " Deposit Agreement " was executed, whereby there was appointed a " Bondholders' Protective Committee " to represent the holders of the above mentioned bonds in default. Those bondholders electing to subscribe thereto, agreed to deposit their bonds with the designated depository, the National City Bank of New York, and receive in exchange the latter's certificates of deposit. The committee was vested, " as Trustees of an express trust ", with legal title to all bonds and coupons so deposited, with full power and authority to exercise all rights and privileges of the individual bondholders. In addition, the committee was given broad express powers to " prepare and adopt a plan and agreement of reorganization or adjustment "; to " sell or exchange the deposited bonds "; to waive any default by the C. S. B. & N. I. Ry. Co.; or to institute foreclosure proceedings.

The committee developed and proposed a plan and agreement designated " Reorganization of the C. S. B. & N. I. Ry. Co. Plan and Agreement, Dated October 11, 1929 ", which was carried into effect during 1929 and 1930. In accordance with its provisions the bondholders who became parties thereto were required to pay to the committee, upon demand, $25 cash for each $1,000 par value of bonds

left on deposit with the depository. Approximately 97 percent of the holders of the bonds in default became parties to the plan and agreement. At the instigation of the committee, in pursuance of the plan and agreement, the trustees of the mortgages securing the three issues of bonds in default, brought foreclosure proceedings in the Federal District Court. Pursuant to the court's final judgment, decree and order of sale issued November 9, 1929, all the properties of the C. S. B. & N. I. Ry. Co. were sold in one parcel at public judicial sale on February 1, 1930, to representatives of the committee on a cash bid of $430,000 free and clear of all liens and encumbrances, except the lien of any taxes, assessments and water rents lawfully levied or assessed and also the lien of the first mortgage securing the I. Ry Co. bonds not in default. From the proceeds of such sale the receiver applied $56,038.91 to charges taking precedence over bonds and appropriated the balance to pro rata partial payment on the three bond issues in default. The amount of $63,508.28 of the bid price was paid to the receiver by the committee in cash out of the fund obtained from the bondholders pursuant to the plan and agreement. The balance of the bid price was paid by crediting on the bonds their pro rata share of the proceeds of the sale. The court ordered that such credits be endorsed on the bonds by the receiver as the amount paid thereon and entered deficiency judgments for the unpaid portion of the interest due thereon. Following the foreclosure sale, the C. S. B. & N. I. Ry. Co. had no assets of any kind with which it could ever pay or satisfy any part of the unpaid portion of the debt represented by the deficiency judgments and the bondholders had recourse, for the payment of such debt, only against that corporation. The C. S. B. & N. I. Ry. Co. was not formally dissolved in 1930, but following the foreclosure sale of all of its properties, it ceased to be active.

Pursuant to the plan and agreement the committee organized a new corporation, under the laws of Indiana, named Northern Indiana Railways, Inc. Its articles of incorporation were filed with the Secretary of State of Indiana on February 3, 1930. To such corporation the committee transferred all of its interest in the properties purchased by it at the foreclosure sale and also the balance of the cash on hand from the fund subscribed by the participating bondholders. Subsequently the receiver deeded such properties to the Northern Indiana Railways, Inc., as the nominee of the purchasers. In consideration for the properties so acquired, the Northern Indiana Railways, Inc., issued and delivered to the committee on or about June 1, 1930, a part of its authorized no par common stock and bonds, which were distributed by the committee to the parties represented by it, in proportion to their interest in the property purchased at the foreclosure sale. The Northern Indiana Rail-

ways, Inc., assumed liability for the I. Ry. Co. bond issue, which was extended by agreement with the holders of such bonds.

The plan and agreement so executed was developed solely by the bondholders' protective committee as the representative of that portion of the holders of the three issues of bonds in default, who subscribed to the plan and agreement. Neither the C. S. B. & N. I. Ry. Co., its general creditors, stockholders, nor its bondholders of any issue other than those represented by the committee (nor any other corporation, stockholders or bondholders) took any part in the formation of the plan or the execution of the agreement, nor did they participate in the benefits or burdens of the plan or take any formal action of any kind pertaining to the proceedings under the plan, or acquire any interest in the Northern Indiana Railways, Inc. The C. S. B. & N. I. Ry. Co. did not file in the office of the Secretary of State of Indiana, any articles of consolidation or merger.

Until 1930 the C. S. B. & N. I. Ry. Co. owned the stock and, under agreement, operated the properties of the Southern Michigan Railway Co., which defaulted on its first mortgage bonds in 1927. A receiver was appointed and a bondholders' committee bid in the property of that company at a foreclosure sale. Such property, free and clear of all liens and encumbrances including second mortgage bonds, was transferred to the Northern Indiana Railways, Inc., for $107,200 par value bonds and 4,824 shares of stock of the latter company, by an agreement executed in 1930. Neither the Southern Michigan Railway Co., its stockholders, nor its bondholders had any part in formulating or executing the plan and agreement entered into by the bondholders of the C. S. B. & N. I. Ry. Co. Petitioner's decedent owned no stock or bonds of the Southern Michigan Railway Co.

Petitioner's decedent deposited his $27,000 par value bonds with the depository and received the latter's receipts therefor. He subscribed to the plan and agreement proposed by the committee and in 1930 paid to the latter the sum of $625 in discharge of his obligation to pay $25 for each $1,000 par value of bonds deposited.

The pro rata portion of the payment made by the receiver on the decedent's $27,000 face value bonds and the pro rata part of the deficiency judgment applicable to the unpaid balance of his bonds were as follows:

| | Face value of bonds held by decedent | Pro rata payment | | Deficiency judgment applicable to unpaid balance |
|---|---|---|---|---|
| | | Percent | Amount | |
| C. S. B. & N. I. Ry. Co. bonds | $17,000 | 8.66151 | $1,472.46 | $15,527.54 |
| L. P. & M. C. T. Co. bonds | 4,000 | 6.00854 | 240.34 | 3,759.86 |
| N. I. Ry. Co. bonds | 6,000 | 14.91907 | 895.14 | 5,104.86 |
| Total | 27,000 | | 2,607.94 | 24,392.06 |

In June 1930, petitioner's decedent received from the committee his pro rata share of the stock and bonds of the Northern Indiana Railways, Inc., in the amounts of 553 shares and $9,775 principal amount of bonds, which he retained until his death in November 1930. Such securities were included in his estate, for Federal estate tax purposes, at a value of $2.25 per share for the stock and $35 per $100 face value for the bonds. He made no other disposition of the C. S. B. & N. I. Ry. Co., L. P. & M. C. T. Co., and N. I. Ry. Co. bonds on which he had received in 1930 a partial payment and a deficiency judgment for the unpaid balance of the principal amount.

Petitioner's decedent kept only a memorandum record of his assets and income, in which he made a notation in March 1930 of his receipt of the depository's receipts for the bonds deposited by him and also of his payment of $25 per $1,000 face value of bonds deposited.

The 1930 income tax return, filed by petitioner on behalf of C. M. Kitselman, deceased, shows a deduction of $15,858.25 as a "Bad Debt" on account of the unpaid balance of the bonds on which the C. S. B. & N. I. Ry. Co. had defaulted. The Commissioner disallowed the claimed deduction. He now contends that the 1930 transaction constituted a statutory reorganization resulting in an exchange of his securities in the old corporation for securities in the new corporation, upon which no gain or loss is recognized under section 112 (b) (3) of the Revenue Act of 1928.[1] Petitioner contends that the transactions carried out in 1930 with respect to the properties of the C. S. B. & N. I. Ry Co. and the N. I. Ry. Co., and the

---

[1] SEC. 112. RECOGNITION OF GAIN OR LOSS.

(a) *General rule.*—Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 111, shall be recognized, except as hereinafter provided in this section.

(b) *Exchanges solely in kind.*—

\* \* \* \* \* \* \*

(3) STOCK FOR STOCK ON REORGANIZATION.—No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.

\* \* \* \* \* \* \*

(i) *Definition of reorganization.*—As used in this section and sections 113 and 115—

(1) The term "reorganization" means (A) a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or substantially all the properties of another corporation), or (B) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred, or (C) a recapitalization, or (D) a mere change in identity, form, or place of organization, however effected.

(2) The term "a party to a reorganization" includes a corporation resulting from a reorganization and includes both corporations in the case of an acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation.

organization of the Northern Indiana Railways, Inc., were not a statutory reorganization within the meaning of section 112 (i), *supra.* It is then argued, accordingly, that decedent was entitled to deduct in 1930, as a bad debt under section 23 (j) of the 1928 Act,[2] the amount of either the principal amount of the bonds for which the deficiency judgment was entered and ascertained to be worthless in 1930, or, in the alternative, the excess of the decedent's basis over the partial payment received on the bonds in 1930 or, again in the alternative, that he was entitled to deduct in 1930, as a " loss " under section 23 (e) of the same act, the amount by which that basis exceeded the sum recovered on the bonds in 1930.

In support of his contention respondent relies on *First National Bank of Champlain, N. Y.,* 21 B. T. A. 415, and *Rockford Dairy, Inc.,* 26 B. T. A. 501, wherein on facts similar in many respects to those here involved, the Board held that there was a statutory reorganization even though neither the old corporation nor its stockholders acquired any interest in the new corporation. Those decisions were rendered prior to *Cortland Specialty Co.* v. *Commissioner,* 60 Fed. (2d) 937; certiorari denied, 288 U. S. 599, and *Pinellas Ice & Cold Storage Co.* v. *Commissioner,* 287 U. S. 462. The latter two court decisions have definitely laid down the principle that one of the essentials of a statutory reorganization, as defined by the revenue acts, is a continuity of interest on the part of the transferor (or seller) corporation or its stockholders in the transferee (or purchaser) corporation. To the extent that *First National Bank of Champlain, N. Y., supra,* and *Rockford Dairy, Inc., supra,* are in conflict with such principle of law, they, of course, are no longer authorities.

Here, it is clear that the transactions carried out in 1930 did not constitute a reorganization within the meaning of section 112 (b) (3), *supra,* since there was no reorganization as defined by section 112 (i), *supra.* The plan or agreement was both formulated and executed solely by a portion of the bondholders of the C. S. B. &

---

[2] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

\*          \*          \*          \*          \*          \*          \*

(e) *Losses by individuals.*—In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise—

\*          \*          \*          \*          \*          \*          \*

(2) if incurred in any transaction entered into for profit, though not connected with the trade or business ; \*  \*  \*

\*          \*          \*          \*          \*          \*          \*

(j) *Bad debts.*—Debts ascertained to be worthless and charged off within the taxable year (or, in the discretion of the Commissioner, a reasonable addition to a reserve for bad debts) ; and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt to be charged off in part.

N. I. Ry. Co., which was insolvent. At the judicial sale those *bond-holders*, through their committee, became the purchasers of all of that railway company's assets. The purchase price paid by them was used by the receiver to pay certain liabilities and to make a partial payment on the company's outstanding bonds in default. The court entered deficiency judgments for the balance due the bondholders, to which extent the bonds became worthless in 1930. The then owners of the properties (formerly owned by C. S. B. & N. I. Ry. Co.) transferred their interest therein to a new corporation, the Northern Indiana Railways, Inc., and received stock and bonds of the latter in proportion to their respective *interest in the property so transferred to it*. Neither the C. S. B. & N. I. Ry. Co. nor its stockholders were parties to the plan, nor did either that corporation or its stockholders acquire any interest in the Northern Indiana Railways, Inc. On their part there was no continuity of interest in the new corporation and therefore no statutory reorganization. Cf. *J. S. Rippel & Co.*, 30 B. T. A. 1146; *Ballwood Co.*, 30 B. T. A. 644; affirmed per curiam, — Fed. (2d) — (C. C. A., 3d Cir., July 16, 1935); *Newberry Lumber & Chemical Co.*, 33 B. T. A. 150.

Petitioner's decedent owned $27,000 face value of C. S. B. & N. I. Ry. Co. bonds on which he received in 1930 a partial payment, credited on his bonds, in the amount of $2,607.94. While the unpaid balance of the bonds represented a worthless debt of the C. S. B. & N. I. Ry. Co. (*Henry R. Huntting*, 32 B. T. A. 495), petitioner's claim for a worthless debt deduction of $24,392.06 ($27,000 face value less $2,607.94 recovered) is untenable, for such amount is in excess of his actual outlay or cost in acquiring the bonds.

Generally speaking, the income tax statutes are concerned only with actual realized losses. *Weiss* v. *Wiener*, 279 U. S. 333. The unpaid balance of decedent's bonds became totally worthless in 1930 and he sustained a *loss* in that year, of his unrecovered investment therein. *Forbes* v. *Commissioner*, 62 Fed. (2d) 571. The amount of such loss was the excess of his basis of $20,500 over $2,607.94, the partial payment received in 1930, or the sum of $17,-892.06, which he was entitled to deduct from his gross income for 1930, pursuant to section 23 (e), *supra*.

The record herein does not establish that the taxes heretofore paid for 1930 were paid within two years of the filing of a claim for refund or the filing of the petition herein, as required by section 504 of the Revenue Act of 1934.

Reviewed by the Board.

*Decision will be entered pursuant to Rule 50.*