882

Marlborough House, Inc., Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Bondholders Committee, Marlborough Investment Co., First Mortgage Bonds, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket Nos. 90452, 90486, 90487.   Promulgated November 9, 1939.

*Wm. Z. Kerr, Esq.,* and *Harold L. Scott, C. P. A.,* for the petitioners.

*Edward C. Adams, Esq.,* for the respondent.

## OPINION.

KERN: The first issue to be determined in these proceedings has to do with the basis for depreciation of the property held by petitioners. The answer depends upon whether the acquisition by the bondholders of a corporation of the latter's property as a result of a foreclosure action, and the subsequent acquisition of the same property by another corporation organized for that purpose by the bondholders, constitute a reorganization within the meaning of the statute, so that the basis for depreciation of the property in the hands of the bondholders and later in the hands of the second corporation would be the same as the basis for depreciation in the hands of the first corporation against which the foreclosure action was brought.

It is the contention of petitioners that there was such a reorganization. Respondent contends that there was no reorganization and that the basis for depreciation in the hands of the petitioners must be the amount bid for the property at the foreclosure sale.

The rule applied by us until recently in similar cases was that the basis for depreciation in the hands of foreclosing bondholders and corporations organized by them for the purpose of acquiring the property foreclosed was either the fair market value of the property at the time it was sold on foreclosure, or the fair market value of the bonds used by the bondholders in payment of the price bid at the foreclosure sale. *Suncrest Lumber Co.*, 25 B. T. A. 375; *Newberry Lumber & Chemical Co.*, 33 B. T. A. 150.

But in the case of *Commissioner* v. *Kitselman*, 89 Fed. (2d) 458 (certiorari denied, 302 U. S. 709), the Circuit Court of Appeals for the Seventh Circuit, in reversing our decision reported in 33 B. T. A. 494, held under similar circumstances that there was a reorganization as defined in section 112 (i) of the 1928 Act. To the same effect is *Commissioner* v. *Newberry Lumber & Chemical Co.*, 94 Fed. (2d) 447 (reversing 33 B. T. A. 150), decided by the Circuit Court of Appeals for the Sixth Circuit. In that case the precise question presented by the instant proceedings was considered and it was held that the basis for depreciation in the hands of the corporation organized by the bondholders to take over the assets upon foreclosure would be the same as that of the mortgagor corporation. In the cases of *Lucien H. Tyng*, 36 B. T. A. 21 (affirmed on this issue, 106 Fed. (2d) 55), and *Frederick L. Leckie*, 37 B. T. A. 252, we indicated our intention to now apply the rule laid down in *Commissioner* v. *Kitselman, supra*, and *Commissioner* v. *Newberry Lumber & Chemical Co., supra*.

In one respect the instant proceedings differ from the *Kitselman* case and the *Newberry Lumber & Chemical Co.* case. The record here does not contain any evidence specifically relating to a plan of reorganization. There is testimony as to the different steps taken by which the second corporation acquired title after the foreclosure proceedings and the bondholders of the first corporation became the stockholders of the second. There is also testimony to the effect that, since no market existed for the sale of the property, no attempt at liquidation was made by the bondholders upon foreclosure. The deposit agreement, which was put in evidence and under which the committee was created, grants broad powers to the committee such as are usual in corporate reorganizations, and makes several references to a "plan" to be adopted by the committee for the purpose of protecting the interests of the depositors. In other words, the record discloses a reason for a reorganization rather than a liquida-

tion, and also discloses the taking of steps usual in the most common type of reorganization. Cf. I. T. 2071, III–2, C. B. 34. As we said in *William H. Redfield*, 34 B. T. A. 967, 973: "It is not necessary, however, that such a plan of reorganization be evidenced by a formal written document, such as a contract or corporate minutes. It is sufficient if the circumstances indicate that the various steps taken were pursuant to a definite plan of reorganization." We can not doubt that under the circumstances present in these proceedings there was a plan of reorganization formulated by the committee and pursuant to which the steps were taken as disclosed by the record.

Holding as we do that there was here a reorganization within the meaning of sections 112 (a) (3) and 112 (i), Act of 1932, it follows that the basis for depreciation in the hands of petitioners will be the same as that in the hands of the predecessor corporation, the Marlborough Investment Co., less the depreciation already taken by such predecessor. Sec. 113 (a) (6), Act of 1932.

The next issue has to do with the income received by the Bondholders Committee, Marlborough Investment Co., First Mortgage Bonds, petitioner in Docket No. 90486, while it was in possession of the property from July 1 to November 20, 1933. The double question is raised of who should have returned this income and the rate at which it should have been taxed. This income was reported in the return of the new corporate petitioner, but the committee made no return of any kind. It is plain that this procedure was erroneous (see *Chicago, Rock Island & Pacific Railway Co.* v. *Commissioner*, 47 Fed. (2d) 990) and petitioners do not now contend otherwise. The petitioner Bondholders' Committee now contends, however, that it is taxable as a liquidating trust and not as a corporation, and that its failure to file a return was due to reasonable cause. Respondent, on the other hand, contends that the committee was an association doing business in an organized capacity, the net income of which was distributable to its members in proportion to the capital each had invested, and was, therefore, taxable as a corporation (see arts. 1312 and 1314, Regulations 77); and he further contends that an additional tax of 25 per centum is to be properly assessed against the committee because of its failure to file a return pursuant to section 291 of the Revenue Act of 1932. The pertinent cases relied on by petitioner are *Broadway-Brompton Buildings Liquidation Trust*, 34 B. T. A. 1089, and *Dolese & Shepherd Co.*, 30 B. T. A. 1171. The pertinent case relied upon by respondent is *Bondholders Protective Committee* v. *United States* (U. S. Dist. Ct., So. Dist. Calif., Nov. 16, 1938).

Having held as we have that the acts of petitioners constituted a reorganization and that there was a plan of reorganization, we can not consistently adopt the view urged on us by petitioners that the

primary object of the committee was the liquidation of the property and not its transfer to a newly organized corporation. A careful reading of the deposit agreement convinces us that the primary object of the committee was to hold, manage, and operate the property after foreclosure and pending the organization of the corporation which would take over the property in consummation of the plan of reorganization worked out by the committee. There is nothing in the record to indicate that liquidation by selling the property on the market was ever contemplated or desired. The mere fact that the committee had an incidental power to sell which could have been exercised in the event the contemplated reorganization was unsuccessful does not persuade us that the activities of the committee constituted a liquidation. Since it was not a liquidating trust but an association meeting the tests laid down in *Morrissey* v. *Commissioner*, 296 U. S. 344, we hold that the Bondholders Committee, Marlborough Investment Co., First Mortgage Bonds was properly taxable as a corporation on the income received by it.

Since the committee filed no return, it is liable for the additional tax of 25 per centum computed upon its taxable income, regardless of the reason for its failure to file such a return. *Moulton Green, Trustee*, 24 B. T. A. 1121; *Harry D. Kremer*, 31 B. T. A. 566.

The next issue involves the proper rate to be applied in ascertaining the amount of depreciation to be deducted by petitioners for the taxable years. It is the contention of petitioners that the apartment building had an economically useful life of only 30 years after July 1, 1933, instead of 45 years as determined by the respondent, and that respondent, in applying a rate of depreciation determined by estimating a remaining life of 45 years, did not include a reasonable allowance for obsolescence as required by section 23 (k) of the Act of 1932 and section 23 (l) of the Act of 1934. Two witnesses testified as experts on behalf of petitioners. They were familiar with the history of apartment house values in the city of Seattle and were familiar with the general location and general construction of the apartment house building owned by petitioners. Their testimony was that such an apartment building had a useful life of from 30 to 35 years, and they justified their conclusion by relating case histories of other apartment buildings of similar type and location which had lost their value within such a period by reason of the construction of newer apartment buildings better and more suitably arranged with more modern plumbing and equipment, and also by reason of the shifting of regions thought desirable for apartment buildings. They further testified to the effect that the economic and useful life of an apartment building was not as long as that of an office building because of the former's continuous use throughout the full day. While this evidence was, as

respondent points out, rather general in its scope, it nevertheless embraced and definitely referred to the property in question, and since it is uncontradicted and we have no special knowledge on our own part which would justify its rejection, we can not disregard it. *Pittsburgh Hotels Co.* v. *Commissioner*, 43 Fed. (2d) 345, and cases there cited. Therefore, we must conclude that the apartment building owned by the petitioners had an economic and useful life of 35 years after it was constructed in 1927. Since under the pleadings the petitioners claim depreciation calculated on a basis of a useful life of the property of 30 years from July 1, 1933, we have made our finding to that effect. The rate of depreciation will be determined accordingly.

Petitioners have, apparently, abandoned the issues having to do with accrued interest on bonded indebtedness and accrued taxes. No evidence was adduced to substantiate the assignments of error in regard thereto which were set out in the petitions. The determination of the respondent as to these issues is affirmed.

Petitioners concede that the allocation of the basis for depreciation as between real and personal property is correctly made by respondent. They also concede that the rate used as to the personal property is correct.

Reviewed by the Board.

*Decision will be entered under Rule 50.*